## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| **WHISTLE STOP FARMS, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 3:16-cv-02934** |
| | ) | |
| **THE TOWN OF THOMPSON'S** | ) | **Judge Crenshaw** |
| **STATION, TENNESSEE,** | ) | **Magistrate Judge Brown** |
| | ) | |
| **Defendant.** | ) | |

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT TOWN OF THOMPSON'S STATION'S MOTION TO DISMISS

Pursuant to Federal Rule of Civil Procedure 12(b)(6), the Defendant, Town of Thompson's Station, Tennessee (the "Town"), moves to dismiss Whistle Stop Farms, LLC's ("Whistle Stop") First Amended Complaint (Doc. No. 52) for failure to state a claim upon which relief may be granted. First, insofar as Plaintiff attempts to assert claims arising out of the February or October 2015 decisions of the Town's Board of Mayor and Aldermen ("BOMA"), those claims are time-barred. Second, Whistle Stop's remaining claims arising out of any subsequent Town actions fail on their merits. As to Plaintiff's equal protection claim, Whistle Stop cannot identify any similarly-situated comparators, nor can it establish that the Town had no rational basis for its decisions. As to Whistle Stop's procedural and substantive due process claims, Whistle Stop has failed to identify any legally-protected interest. Moreover, Whistle Stop was provided any process it was owed in all respects, and none of the Town's actions at issue "shock the conscience."

For each of these reasons, described in more detail to follow, all of Whistle Stop's claims fail, and the First Amended Complaint should be dismissed in its entirety.

## FACTUAL ALLEGATIONS

The following allegations are drawn from Plaintiff's First Amended Complaint (Doc. No. 52):

This lawsuit arises from Whistle Stop Farms, LLC's ("Whistle Stop" or "Plaintiff") attempts to develop a residential subdivision (the "Development") within the Town boundaries. (First Am. Compl. ¶ 1.) The First Amended Complaint begins with allegations relating to "the Town's prior relationship with Whistle Stop's managing member, Jay Franks." (First Am. Compl. at 3.) Plaintiff alleges that Mr. Franks "has been involved with other developments in the Town, including related to the construction and installation of the Town's regional wastewater system." (*Id.* ¶ 11.) According to the complaint, Mayor Napier "cannot stand Mr. Franks" and has "personal" issues with him. (*Id.* ¶ 12.) Mayor Napier "has contended that a company—of which Mr. Franks and a former Town Mayor were members— 'successfully lobbied' the Town 'into approving an unproven/untested sewer system for our Tennessee topography' in the early 2000s." (*Id.* ¶ 13.) The system was conveyed to and accepted by the Town in approximately 2006. (*Id.* ¶ 14.)

Whistle Stop further alleges that in 2010, Mayor Napier wanted the Town to sue Mr. Franks and others after the Town investigated and discovered leaks in the Town's wastewater treatment plant and concluded that Mr. Franks and others were responsible for the problems. (First Am. Compl. ¶¶ 15-20.) The Mayor and other Town officials authorized the Town Attorney to file suit against Mr. Franks's company, Enterprise Construction, if Mr. Franks did not individually execute a tolling agreement by a date certain. (*Id.* ¶ 17.) Though Mr. Franks did not execute the tolling agreement, the Town did not sue, which Whistle Stop alleges infuriated Mayor Napier. (*Id.* ¶¶ 19-20.)

Whistle Stop later purchased the property at issue, specifically, on December 4, 2012. (*Id.* ¶ 21.) On June 25, 2013, the Town's Planning Commission unanimously approved the

2

Development's concept plan for 343 lots, contingent upon Plaintiff working with the Town to resolve issues relating to density, access, slope, and utilities. (*Id.* ¶ 34.) On October 22, 2013, the Planning Commission approved, with contingencies, the preliminary plat for Phase I of the Development and "approved connection of the 46 lots in Phase I to connect to the Town's Heritage Commons wastewater treatment facility." (First Am. Compl. ¶ 36.) On November 15, 2013, Plaintiff paid sewer tap fees for Phase I, capacity allocation fees for all 343 lots, and a preliminary plat fee. (*Id.* ¶ 38.) The Town later issued Plaintiff a grading permit for Phase I, and the Tennessee Department of Environment and Conservation Division of Water Pollution Control ("TDEC") approved Phase I's Development Plans for construction. (*Id.* ¶¶ 55-56.)

Plaintiff also alleges that in July 2014, Town staff informed Plaintiff that approvals for the Development were improperly issued and that Plaintiff needed to obtain Town approval for a revised concept plan. (First Am. Compl. ¶ 60.) The Town Administrator, Joe Cosentini, later told Plaintiff that the BOMA would have to re-consider the original request for sewer connection, which the Planning Commission, not the BOMA, had approved. (*Id.* ¶¶ 34, 36, 68.) According to Plaintiff, Mr. Cosentini also stated that the BOMA "meeting was simply a formality to correct an alleged procedural oversight by the Town and that the [BOMA] would 're-approve' those prior approvals." (*Id.* ¶ 68.) At its February 10, 2015 meeting, the BOMA "purported to revoke the approval for 46 taps in Phase I of the Development and stated that it wanted to "start all over from the top on Whistle Stop." (*Id.* ¶ 72.) Plaintiff thereafter filed a Petition for a Writ of Certiorari and Writ of Supersedeas in Williamson County Chancery Court, asserting that the BOMA lacked authority or exceeded its jurisdiction in "revok[ing] the Development's approvals." Plaintiff alternatively argued that the Town's action was arbitrary, capricious, or unsupported by material evidence. (*Id.* ¶ 73.)

3

During the pendency of the certiorari action, the parties agreed to stay the proceedings so they could explore possible solutions that would be mutually beneficial. (First Am. Compl. ¶ 76.) Plaintiff contends that "the Town was to use this process to continue advancing Mayor Napier's ill will and animus towards Jay Franks and any project with which he is associated." (*Id.*) During the settlement process, the parties began meeting to discuss possible on-site wastewater solutions for the Development, with Aldermen Graham Sheperd and Sarah Benson having suggested an on-site system. (*Id.* ¶¶ 79-80.) According to Plaintiff, "[s]ince the Town claimed on-site sewer systems were now being required by the Town, the Town argued the design of the Development would need to be completely reworked." (*Id.* ¶ 80.) Plaintiff thereafter proposed a revised concept plan that reduced the number of lots from 343 to 164, to accommodate an on-site system. (*Id.* ¶¶ 80-81, 83.) At the October 13, 2015 meeting, the BOMA authorized Town staff to pursue approval from TDEC for what is known as a SABRE Sequencing Batch Reactor ("SBR") wastewater system for the Development. (*Id.* ¶ 86.)

Plaintiff submitted its revised concept plan (for 163 lots) to the BOMA at its January 12, 2016 meeting. (First Am. Compl. ¶ 92.) The BOMA approved the plan on first reading of Ordinance 2016-001, conditioned upon Plaintiff meeting the Town's requirements for approval, including final approval of its proposed wastewater system. (*Id.*) The BOMA approved the ordinance on second reading at its February 9, 2016 meeting. (*Id.* ¶ 94.) Plaintiff alleges that at the same meeting, the BOMA approved the transfer of seventy-five (75) taps from an existing development, Bridgemore Village, to Williamson County Schools ("WCS"), with an additional seven (7) taps approved for WCS and sixty-nine (69) for the completion of Bridgemore Village. (*Id.* ¶ 97.) The approvals were conditioned upon the Town having adequate treatment and disposal capacity at the time of the proposed construction. (*Id.*)

4

According to the Town Administrator's July 2015 communication with Kevin Fortney, the Director of Facilities and Construction for WCS, WCS was seeking to connect "a new school to [the Town's] wastewater system." (*Id.* ¶ 126.)

On May 24, 2016, the Town's Planning Commission considered Plaintiff's preliminary plat. (First Am. Compl. ¶ 104.) Town staff recommended that the Planning Commission deny the request because of the Plaintiff's need to obtain wastewater approval and meet the conditions outlined in Ordinance 2016-001. (*Id.*) The Planning Commission denied the request for a preliminary plat. (*Id.*)

On July 7, 2016, Brad C. Harris, P.E. of TDEC emailed Bob Ramsey (Plaintiff's engineering consultant) and the Town Administrator, stating the following:

> SBR's are proven technology and can be used effectively, however, we do not have any experience or data from anyone associated with a system of this size and configuration over two years old that gives us any confidence in the long term O&M of an SBR without visual input. We strongly recommend that the town, their engineering group, and their designated operator fully research this approach until they are technically confident.

(First Am. Compl. ¶ 109.) Counsel for Whistle Stop then wrote the Town Attorney to address reports that the Town Administrator was "now expressing some concerns regarding the SABRE SBR system." (*Id.* ¶ 112.) After the Town Attorney stated in an email to the Town Administrator that Plaintiff could ask to be de-annexed from the Town, the Town Administrator responded that he "could propose a referendum." (*Id.* ¶ 113.) Plaintiff speculates that Mr. Cosentini's response "is consistent with furthering Mayor Napier's personal animus and ill will toward Jay Franks and entities with which he is involved as a principal" and the Town Administrator's purported "philosophy toward his role as a governmental officer," since "'gotcha' is [the government's] bread and butter." (*Id.* ¶ 114.) Counsel for Plaintiff thereafter wrote the Town Administrator, Town Counsel, and BOMA asking to be placed on the agenda for the BOMA's September 13, 2016 meeting for approval

or disapproval to proceed with the Development using the SABRE SBR system. (*Id.* ¶ 116.)
The letter alternatively requested to issue approval or disapproval of whether the
Development could connect to the Town's existing regional wastewater treatment system.
(*Id.* ¶ 117.) The Town Administrator responded that the Town was "still very open to looking
at different types of SBR systems for Whistle Stop." (*Id.* ¶ 118.) The email also stated that
connection to the Town's regional system was "possible and likely preferable," but that
connections could not occur until the Town acquired drip land capacity for developments
already allocated. (*Id.* ¶ 120.)

At the September 13, 2016 BOMA meeting, the Town Administrator recommended
that Plaintiff select an alternative SBR system or, alternatively, submit a request to connect
to the Town's regional facility when adequate drip field capacity was acquired.[1] (First Am.
Compl. ¶ 124.) At the meeting, the BOMA made a motion, which was unanimously approved,
to direct Plaintiff to select an alternative SBR system. (*Id.* ¶ 76.)

## APPLICABLE STANDARD

When ruling on a defendant's motion to dismiss under Federal Rule of Civil Procedure
12(b)(6), this Court "construe[s] the complaint liberally in the Plaintiffs' favor and accept[s]
as true all factual allegations and permissible inferences therein." *Gazette v. City of Pontiac*,
41 F.3d 1061, 1064 (6th Cir. 1994). Under the standard articulated in *Bell Atlantic Corp. v.*

---

[1] Plaintiff also contends that the Town would have no issue with capacity if it complied with the three-phase Compliance Schedule issued by TDEC for upgrades to the Town's wastewater treatment system. (First Am. Compl. ¶¶ 138-47.) Plaintiff also alleges, however, that the Town did not procure enough drip field capacity to meet the Compliance Schedule's March 1, 2017 deadline. (*Id.* ¶ 150.)

Plaintiff further alleges that the Town annexed property for the purpose of developing a mixed-use community known as "Two Farms," and that the development has offered to dedicate significant open space to be used as drip field for the Town. (*Id.* ¶¶ 153, 165.) Plaintiff alleges that the area in Two Farms "to be utilized for drip field capacity far exceeds what would be needed for the Two Farms development" and that Two Farms "appears to be" the Town's "desired solution" to the Town's drip field deficiency. (*Id.* ¶¶ 165, 168.)

6

*Twombly*, a complaint must allege "enough facts to state a claim to relief that is plausible on its face" to withstand a Fed. R. Civ. P. 12(b)(6) motion to dismiss. 550 U.S. 544, 570 (2007). Furthermore, "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Moreover, "[t]he trial court need not accept as true legal conclusions or unwarranted factual inferences." *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998); *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). And "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

## LEGAL ARGUMENT

### I.     Plaintiff's Claims Arising Out of the BOMA's February and October 2015 Decisions Are Time-Barred.

Claims alleging a violation of civil rights or personal injury pursuant to Section 1983 are governed by the forum state's most applicable statute of limitations. *Laney Brentwood Homes, LLC v. Town of Collierville*, 144 F. Appx. 506, 509 (6th Cir. 2005). For a Tennessee claim, such actions must be filed within one year of their accrual. *Id.* (citing Tenn. Code Ann. § 28-3-104(a)(1), (3)). The accrual date of a Section 1983 action, on the other hand, "is a question of federal law that is *not* resolved by reference to state law." *Wallace v. Kato*, 549 U.S. 384, 388 (2007). "The statute of limitations begins to run 'when the plaintiff knows or has reason to know of the injury which is the basis of the action.'" *Trzebuckowski v. City of Cleveland*, 319 F.3d 853, 856 (6th Cir. 2003) (quoting *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516 (6th Cir. 1997)). In the Section 1983 context, courts "look to the event that

7

should have alerted the typical lay person to protect his or her rights." *Id.* (citing *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991)).

Plaintiff's First Amended Complaint contains more than 170 paragraphs of factual allegations spanning more than a decade. The legal claims ("Counts") section of the First Amended Complaint incorporates by reference all of the previous paragraphs. Accordingly, it is unclear which facts Plaintiff relies on for each claim. Nevertheless, insofar as Plaintiff relies on any actions of the BOMA before November 2015, such claims were not brought within one year of their accrual. Consequently, to the extent that Plaintiff relies on the February 2015 action of the BOMA denying Plaintiff's request for 46 taps in Phase I of the Development, or the events leading up to that denial (*see* First Am. Compl. ¶ 72), those claims are time-barred. Additionally, insofar as Plaintiff challenges the BOMA's action at its September or October 2015 meetings (*see id.* ¶ 80), those claims are also time-barred. Accordingly, the Town is entitled to judgment on any such claims.

Furthermore, Plaintiff's assertion that the Town actions at issue "constitute continuing violations of Whistle Stop's constitutional rights to due process and equal protection under the law" is conclusory and inaccurate. (First Am. Compl. ¶ 5.) Plaintiff has not alleged any facts to suggest that its claim is akin to a (1) pattern of unequal pay or (2) overarching policy of discrimination—that is, the two "categories of 'narrowly limited exceptions' to the usual rule that 'statutes of limitations . . . are triggered at the time the alleged discriminatory act occurred.'" *LRL Props. v. Portage Metro. Housing Auth.*, 55 F.3d 1097, 1105-06 (6th Cir. 1995). Instead, each of the actions at issue are discrete acts that the Plaintiff must challenge individually. But even if Plaintiff had alleged the type of circumstances arising in continuing violations cases, courts have very narrowly applied the "continuing violations" theory, almost exclusively in the context of Title VII discrimination cases. *Id.* at 1105 n.3. This case warrants the same result.

8

For these reasons, Plaintiff's claims arising out of the Town's February, September, and October 2015 actions are time-barred.

## II. Plaintiff's Equal Protection Claim Fails Because Plaintiff Has Not Identified Any Similarly-Situated Comparators, and BOMA Has a Rational Basis for Its Decision.

In the equal protection context, where a plaintiff does not allege that government action affects a suspect class or fundamental right, the plaintiff necessarily proceeds on a "class of one" theory. *Ziss Bros. Const. Co., Inc. v. City of Independence, Ohio*, 439 F. Appx. 467, 475 (6th Cir. 2011) (citing *Club Italia Soccer & Sports Org. Inc. v. Charter Township of Shelby, Michigan*, 470 F.3d 286, 298 (6th Cir. 2006), *overruled on other grounds as stated in Davis v. Prison Health Servs.*, 679 F.3d 433, 440-41 (6th Cir. 2012)). In that instance, the plaintiff must establish that "it has been treated differently from similarly-situated individuals, and that the government's actions lacked any rational basis." *Bench Billboard Co. v. City of Toledo*, 499 F. Appx. 538, 547 (6th Cir. 2012).

As to the first prong, although "exact correlation" is not required, the plaintiff must establish "that the two applicants who were treated differently were 'similarly-situated in all relevant respects.'" *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 864-65 (6th Cir. 2012). In the "class-of-one" context, "courts should enforce the similarly-situated requirement with *particular strictness*." *JDC Mgmt., LLC v. Reich*, 644 F. Supp. 2d 905, 926 (W.D. fMich. 2009) (emphasis added). This requirement "is a vital way of minimizing 'the risk that, unless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors.'" *Id.* (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1211 (10th Cir.2004)).

9

Though the Sixth Circuit "has not yet defined the extent to which individuals must be similarly situated to others in order to maintain a class-of-one claim," Sixth Circuit case law has referenced the Seventh Circuit's requirement that "the challenger and his comparators must be 'prima facie identical in all relevant respects or directly comparable . . . in all material respects.'" *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011) (citing *United States v. Moore*, 543 F.3d 891, 896 (7th Cir. 2008)). Similarly, the U.S. District Court for the Eastern District of Tennessee has cited authority from the Second Circuit, which requires a plaintiff to "show an extremely high degree of similarity between themselves and the person to whom they compare themselves." *Yi-Zhang v. City of Chattanooga*, No. 1:10-CV-213, 2011 WL 4479262, at *5 (E.D. Tenn. Sept. 26, 2011) (copy attached). Another Eastern District of Tennessee district court, drawing from the employment discrimination context, applied the "nearly identical" standard to a class-of-one equal protection claim. *Walters v. City of Johnson City*, No. 2:06-cv-82, 2008 WL 782485, at *3 (E.D. Tenn. Mar. 20, 2008) (citing *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796, 802 (6th Cir. 1994), *abrogated on other grounds as recognized in Carter v. Toyota Tsusho Am., Inc.*, 529 F. Appx. 601 (6th Cir. 2013)) (copy attached).

Lower courts in the Sixth Circuit have adopted a similar standard on the "similarly-situated" prong, given the litany of out-of-circuit authority supporting the position. *E.g.*, *Darling v. Lake County Bd. of Comm'rs*, No. 1:12 CV 194, 2012 WL 1902602, at *19 (N.D. Ohio May 25, 2012) (requiring a showing of "nearly identical" to "all relevant aspects") (copy attached); *JDC Mgmt.*, 644 F. Supp. 2d at 926-27 ("The court is not aware of any precedent precluding us from adopting the Seventh Circuit's sensible requirement that '[t]o be considered similarly situated, the class of one challenger and his comparators must be prima facie identical in all relevant respects or directly comparable in all material respects.'"); *Glenn*

*v. Clement Township*, No. 05-10093-BC, 2006 WL 2092409, at *15 (E.D. Mich. July 27, 2006) (requiring a showing of "*prima facie* identical in all relevant respects") (copy attached). In the Seventh Circuit, for example, an oft-cited circuit in "class-of-one" cases, plaintiffs must establish "that they were treated differently than someone who is *prima facie identical in all relevant respects*." *Purze v. Winthrop Harbor*, 286 F.3d 452, 454-55 (7th Cir. 2002), *cited in EJS Props.*, 698 F.3d at 866.

As to the second prong, a plaintiff has "an uphill climb." *In re City of Detroit*, 841 F.3d 684, 701 (6th Cir. 2016). "Under the rational basis standard, government action is afforded a strong presumption of validity, and [courts] will uphold it as long as 'there is a rational relationship between the disparity of treatment and some legitimate government purpose.'" *Id.* (quoting *Heller v. Doe*, 509 U.S. 312, 320 (1993)). As a result, the defendant 'has no obligation to produce evidence to sustain the rationality of its actions; its choice is presumptively valid and may be based on rational speculation unsupported by evidence or empirical data.'" *Taylor Acquisitions, L.L.C. v. City of Taylor*, 313 F. Appx. 826, 837 (6th Cir. 2009) (quoting *Club Italia*, 470 F.3d at 297). Instead, "a plaintiff bears the entirety of the burden." *Ziss Bros.*, 439 F. Appx. at 476. "A 'class of one' plaintiff may demonstrate that government action lacks a rational basis either by negativing every conceivable basis which might support the government action, or by showing that the challenged action was motivated by animus or ill-will." *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cty., Ohio*, 430 F.3d 783, 790 (6th Cir. 2005). In addition, "[m]ateriality is an integral element of the rational basis inquiry." *Id.* That is, "[w]hether . . . differences are material depends on whether disparate treatment would be justified based on the[ ] attributes—i.e., would the city have a rational reason for voting differently due to these traits." *EJS Props.*, 698 F.3d at 865.

11

Moreover, the Sixth Circuit has made clear that the class-of-one rational-basis standard from "*Heller* applies at the **pleadings stage**." *In re City of Detroit*, 841 F.3d at 701 (citing *Midkiff v. Adams County Reg'l Water Dist.*, 409 F.3d 758, 770 (6th Cir. 2005)) (emphasis added). Thus, "'[t]o survive a motion to dismiss' in the rational basis context, 'a plaintiff must **allege facts sufficient to overcome** the presumption of rationality that applies to government classifications.'" *Id.* (quoting *Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992)) (emphasis added). "Absent facts sufficient to overcome" "the most likely non-discriminatory reasons," an "assertion that there is no rational basis for the difference in treatment is a legal conclusion not entitled to the assumption of truth." *Id.* (citing *Iqbal*, 556 U.S. at 678).

## A. Plaintiff Has Not Identified a Similarly-Situated Developer Who Was Treated More Favorably.

Plaintiff has not met its burden of identifying any similarly-situated comparators who were treated more favorably. In Paragraph 4, Plaintiff merely states in conclusory fashion that the Town has granted "necessary approvals to other similarly-situated parties." (First Am. Compl. ¶ 4.) But conclusory pleadings are insufficient to establish facts to support Plaintiff's claim. *Iqbal*, 556 U.S. at 678. Moreover, the only two entities that Plaintiff references in the First Amended Complaint are not similarly-situated to Plaintiff at all.

First, Plaintiff references the tap exchange involving WCS and Bridgemore Village, presumably attempting to satisfy this requirement. (First Am. Compl. ¶¶ 97-99.) But importantly, the First Amended Complaint alleges no facts to establish that the situation is comparable to the Whistle Stop Development at all, much less "nearly identical" as courts have required in this context. Whistle Stop is a residential Development being pursued for the benefit of the developer (and arguably the residents who will live in it). The allegations in the First Amended Complaint concerning the exchange of taps between WCS and

12

Bridgemore Village establish a demonstrably public benefit—the building of a public school. And there is a marked difference between a private developer pursuing a Development for its own benefit and a public entity seeking wastewater approvals for the building of a public school.

Plaintiff also references various events surrounding the Two Farms development. (First Am. Compl. ¶¶ 153-72.) While it is unclear whether Plaintiff identifies Two Farms as a potential drip-field solution, a potential comparator, or both, any attempts to establish Two Farms as a legally-significant comparator fall flat. Simply stated, the First Amended Complaint does not allege a legally-sufficient similarity between Whistle Stop and a mixed-use development that was proposed to include 800 homes, commercial uses, and recreational uses, including a golf course designed by Tiger Woods. (*Id.* ¶¶ 153, 155.) Moreover, no actions have been alleged with respect to Two Farms that are in any way similar to the Development at issue here. Indeed, aside from the annexation of land and rezoning, the First Amended Complaint cites no formal Town action at all with respect to Two Farms. Regardless of any formal action concerning Two Farms, there is a significant difference between a Development proposing drip field capacity for its own Development[2] and drip field capacity for the entire Town's deficiency.

By way of comparison, in *EJS Properties, LLC v. City of Toledo*, the Sixth Circuit Court of Appeals affirmed the city's differential treatment of a charter school and a traditional public-school system even where "they were both seeking to re-zone at least a portion of the exact same lot for the purpose of opening a school." 698 F.3d 845, 865 (6th Cir.

---

[2] Even so, nothing in the First Amended Complaint establishes that the BOMA ever took action related to a purported proposal that included Whistle Stop donating land for drip field. Rather, it merely details a letter from counsel for Whistle Stop in which "Whistle Stop proposed to allocate the necessary drip area sufficient to handle the disbursement of all treated wastewater within the Development." (First Am. Compl. ¶ 118.)

2012). The court noted, in part, that the Toledo Public Schools system "as an arm of the government was more financially stable than a new charter school proposal that relied on both a purchase contract with the actual property owner and a lease with the school provider." *Id.* Other circuits have also rejected equal protection claims where developers attempted to compare properties that differed in intended use or age. *E.g.*, *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 57, 60 (2d Cir. 2010) (rejecting as insufficiently similar to a 27-acre lakefront lot containing a single house and 3 other structures, the following: "a house built in 1987; a country club that was renovated in 'the early 1990's'; two neighboring properties—'connected to the Village sewer system for decades'—that are not further described; a house built 'in or around 2004'; a 'luxury spa' built 'in the late 1990's'; and a 'large commercial building'").

Simply stated, a residential subdivision development and a public school are more different than the comparisons identified above that courts have rejected. And even if the First Amended Complaint alleged that the Town had granted any formal approvals concerning Two Farms, Two Farms is markedly different than the Development at issue. In the end, Plaintiff cannot establish a legally-sufficient association between the Town's actions here and any actions taken with respect to WCS/Bridgemore or Two Farms. Nor has Plaintiff alleged any other similarly-situated developers who were treated more favorably. In fact, Plaintiff has not alleged any other comparators at all. Thus, Plaintiff's equal protection claim should be dismissed.

**B.    The Town Has a Rational Basis for Its Actions and Plaintiff Alleges No Facts to Support a Finding of Ill Will or Animus.**

Even if Plaintiff had identified similarly-situated comparators, the detailed First Amended Complaint ***establishes*** that the Town's actions at issue were rationally-based. The First Amended Complaint acknowledges that the Town lacked drip field capacity to

14

accommodate the Whistle Stop Development. (First Am. Compl. ¶ 22 & n.1.) The BOMA—the entity with wastewater authority in the Town—had a sound reason for rejecting the proposed, untested on-site system over which TDEC even distanced itself. (*Id.* ¶ 109 ("SBR's are proven technology and can be used effectively, however we do not have any experience or data from anyone associated with a system this size and configuration over two years old that gives us any confidence in the long term O&M of an SBR without visual input. We strongly recommend that the town, their engineering group, and their designated operator fully research this approach until they are technically confident.").)

In addition, whether any differences between Whistle Stop and other developments "are material depends on whether disparate treatment would be justified based on these attributes—i.e., would the city have a ***rational reason*** for voting differently due to these traits." *EJS Props.*, 698 F.3d at 866 (emphasis added). Put another way, the question of whether a municipality has a rational reason for acting may overlap with the analysis of the differences between the entities at issue. And here, like in *EJS Properties*, the differences highlight the rationality of the Town's actions. That is, even if the Development was treated differently than Two Farms or WCS/Bridgemore, and even if the two were legally-significant comparators, both the Two Farms and WCS projects provide an inherently public benefit to the Town and its citizenry. Drawing reasonable inferences from the allegations in the First Amended Complaint, the WCS project will yield a new public school, and the Two Farms development will yield significant Town recreational use and sufficient drip field capacity to resolve the entire Town's deficiency. Because Plaintiff has not negated the rational reasons for the BOMA action at issue, Plaintiff's equal protection claim fails.

Additionally, Plaintiff has not alleged facts to support a finding of ill will or animus to establish the "no rational basis" element. Importantly, to demonstrate animus or ill will, a plaintiff must prove that the challenged government actions were motivated by personal

15

malice unrelated to the defendant's official duties." *Klimik v. Kent County Sheriff's Dep't*, 91 F. Appx. 396, 401 (6th Cir. 2004) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)); *Hilton v. City of Wheeling*, 209 F.3d 1005, 1008 (7th Cir. 2000); *Bower v. Vill. of Mount Sterling*, 44 F. Appx. 670, 678 (6th Cir. 2002); *Albiero v. City of Kankakee*, 246 F.3d 927, 932 (7th Cir. 2001); *Bartell v. Aurora Pub. Sch.*, 263 F.3d 1143, 1149 (10th Cir. 2001). In *Hilton v. City of Wheeling*, 209 F.3d 1005 (7th Cir. 2000), the Seventh Circuit case cited by the Sixth Circuit in *Klimik*, Judge Posner notes the following: "We described the class of equal protection cases illustrated by *Olech* as 'vindictive action' cases and said that they require 'proof ***that the cause of the differential treatment*** of which the plaintiff complains was a totally illegitimate animus toward the plaintiff by the defendant.'" *Hilton*, 209 F.3d at 1008 (citing *Olech v. Vill. of Willowbrook*, 160 F.3d 386, 388 (7th Cir. 1998) (emphasis added)).

Here, Plaintiff has not alleged any facts to overcome the Town's presumptively valid basis for its actions, nor facts to establish that the government actions at issue were motivated by personal malice unrelated to the defendant's official duties. While Plaintiff alleges that Mayor Napier "held great personal ill will and animus towards Mr. Franks" (First Am. Compl. ¶ 28), there is nothing in the First Amended Complaint to support a finding that Mayor Napier's alleged personal feelings, rather than the merits of the matter before the BOMA, were the ***cause*** of any relevant BOMA action. Indeed, despite 186 paragraphs with allegations dating back to the early-2000s, with many containing direct quotations, the First Amended Complaint contains no allegation asserting (or from which it could be inferred) that Mayor Napier instructed or in any way influenced BOMA's unanimous votes on Whistle Stop issues. Instead, the First Amended Complaint is littered with editorializing and conclusions couched as allegations, which do not salvage Plaintiff's claim. (First Am. Compl. ¶¶ 62, ("This is especially true . . . "), 64 ("Consistent with this . . . "), 65 ("alarmed

that Whistle Stop was getting traction . . . "), 114 ("Mr. Cosentini's attitude and treatment of Whistle Stop is consistent with furthering Mayor Napier's personal animus and ill will toward Jay Franks and entities with which he is involved as a principal.").) Conclusory statements and speculative inferences such as these are not deemed true for purposes of a motion to dismiss. *Lewis*, 135 F.3d at 405; *Iqbal*, 556 U.S. at 678.

Simply stated, the First Amended Complaint establishes on its face a rational basis for the BOMA's decisions relating to Whistle Stop. Plaintiff has not even attempted to negate the reasons—indeed, the complaint acknowledges them. Moreover, the complaint's only attempts to connect Mayor Napier's purported feelings toward Mr. Franks or his companies with BOMA's decisions concerning Whistle Stop constitute conclusory conjecture at best. Accordingly, Whistle Stop has failed to plead a viable equal protection claim.

## III.    Plaintiff's Procedural Due Process Claim Fails Because Plaintiff Has Not Alleged a Protected Interest and Was Not Denied Notice and an Opportunity To Be Heard.

To establish a procedural due process claim, Plaintiff must establish the following: (1) Plaintiff "had a life, liberty, or property interest protected by the Due Process Clause," (2) the Town deprived Plaintiff of that interest, and (3) the Town did not provide Plaintiff "adequate procedural rights prior to depriving [Plaintiff] of the property interest." *EJS Props.*, 698 F.3d at 855. As to the first prong, "[p]roperty interests are not defined by the Constitution. Rather, they are created and defined by 'existing rules or understandings that stem from an independent source such as state law.'" *Taylor Acquisitions*, 313 F. Appx. at 831. Moreover, "[a]n abstract need or unilateral expectation is insufficient to create a constitutionally protected property interest; a person must have a 'legitimate claim of entitlement.'" *Id.* (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972)).

In addition, "a person cannot have a property interest in a procedure itself," nor does a property interest exist "where a decisionmaker's power is wholly discretionary." *Taylor*

17

*Acquisitions*, 313 F. Appx. at 832. In the liberty interest context, a plaintiff must identify "more than just freedom from bodily restraint." *Id.* at 833 (citing *Roth*, 408 U.S. at 572). Instead, liberty interest in this context "refers to 'the right of the individual . . . to engage in any of the common occupations of life.'" *Id.* (citing *Roth*, 408 U.S. at 572). As a result, the Sixth Circuit has held that a developer is not deprived of a protected liberty interest merely because the developer is prevented from developing a particular property. *E.g.*, *id.* (citing *Parate v. Isibor*, 868 F.2d 821, 831 (6th Cir. 1989)).

Whistle Stop cannot identify any protected interest of which it was deprived. The Town—and, more specifically, the BOMA—had the discretion to deny Plaintiff's request for a particular type of wastewater treatment system. Per Title 18 of the Town's municipal code, adopted pursuant to Tenn. Code Ann. § 7-35-406, the BOMA "serve[s] and perform[s] as the authorized board of the town's wastewater works systems and facilities." Municipal Code § 18-102.[3] The Code also states that "deep cell, long duration aerated lagoon treatment followed by irrigation" is the Town's "wastewater reclamation and reuse system of choice." *Id.* § 18-130. And while the Town will consider other types of systems, "[f]inal approval of ***all*** systems shall lie with the mayor and board of aldermen of the town," not the Planning Commission. *Id.* (emphasis added). Furthermore, the law is clear that a developer does not have a protected interest in developing a particular property. *Taylor Acquisitions*, 313 F. Appx. at 832. In the end, Plaintiff can identify no provision of state or local law that would outright preclude the BOMA from denying Plaintiff's request for a particular wastewater treatment system. Just like in *EJS Properties*, the question is not whether the Planning Commission or some other non-binding board or commission granted any relevant approvals—the question is whether the BOMA, the statutory designated wastewater board, did. *EJS Props.*, 698 F.3d at 856

---

[3] Title 18 of the Town's Municipal Code is attached hereto in full, as Exhibit 1.

("EJS concedes that the City Council had never approved the ordinance, as is required; only the Planning Commission and the Committee had approved it."). And because the BOMA's decision was "categorically discretionary" in the context alleged here, as it was in *EJS Properties*, Plaintiff's claim fails.

But even if Plaintiff had identified a protected liberty or property interest, Plaintiff was provided all process it was due. "Generally, the process that is due before a property deprivation includes prior notice and an opportunity for a predeprivation hearing." *Warren v. City of Athens, Ohio*, 411 F.3d 697, 709 (6th Cir. 2005). Plaintiff was not denied the right to develop a particular type of wastewater treatment system without due process. Notably, the deprivations that Plaintiff seeks to allege occurred through formal Town action, at public meetings. Moreover, the detailed First Amended Complaint makes clear that Plaintiff's counsel was communicating with Town officials throughout the process in 2016, further undermining any suggestion that Plaintiff was not provided an opportunity to be heard. (*E.g.*, First Am. Compl. ¶¶ 110, 112, 116-20, 122-23.) As a result, Plaintiff has failed to allege any procedural due process violation notwithstanding the absence of a protected liberty or property interest at stake. Accordingly, Plaintiff's procedural due process claim should be dismissed as well.

**IV.      Plaintiff's Substantive Due Process Claim Fails Because Plaintiff Has Not Alleged a Viable Property Interest and None of BOMA's Relevant Actions "Shock the Conscience."**

The substantive due process doctrine establishes that "'governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed.'" *Range v. Douglas*, 763 F.3d 573, 588 (6th Cir. 2014) (quoting *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1216 (6th Cir. 1992)). But this doctrine "'protects a narrow class of interests, including those enumerated in the Constitution, those so rooted in the traditions of the people as to be ranked fundamental, and the interest in freedom from government

19

actions that "shock the conscience,'" as well as "the right to be free from 'arbitrary and capricious' governmental actions, which is another formulation of the right to be free from conscience-shocking actions." *Id.* (quoting *Bell v. Ohio State Univ.*, 351 F.3d 240, 249-50 (6th Cir. 2003); *Bowers v. City of Flint*, 325 F.3d 758, 763 (6th Cir. 2003); *Pearson*, 961 F.2d at 1216-17). As with any substantive due process claim, "[t]o establish a substantive due process claim in the context of land-use regulations, plaintiffs must prove they possess a constitutionally protected property or liberty interest." *J-II Enterprises, LLC v. Bd. of Comm'rs of Warren County, Ohio*, 135 F. Appx. 804, 806-07 (6th Cir. 2005). And just as with procedural due process, "land owners have no constitutionally protected property interest in developing their land unless zoning authorities lack discretion to deny the land owners permission to develop the land." *Id.*; *Silver v. Franklin Township Bd. of Zoning Appeals*, 966 F.2d 1031, 1036 (6th Cir. 1992).

Plaintiff's failure to allege a protected liberty or property interest is equally fatal to its substantive due process claim as to its procedural one. But even if Plaintiff had alleged a viable interest, there are no Town actions at issue in Plaintiff's First Amended Complaint that even arguably qualify as "conscience-shocking" for purposes of federal law. In fact, in *EJS Properties*, the Sixth Circuit concluded that government officials soliciting a bribe does not shock the conscience. Nothing alleged in Plaintiff's First Amended Complaint comes anywhere near the severity and egregious nature of government officials soliciting bribes. Plaintiff's substantive due process claim should be dismissed for this reason, as well.

## CONCLUSION

All of the claims in Plaintiff's First Amended Complaint should be dismissed. First, insofar as Plaintiff attempts to assert claims arising out of the Town's February, September, or October 2015 action on Plaintiff's wastewater treatment requests, the claims are time-barred. Second, Plaintiff's remaining claims fail on their merits. Plaintiff's equal protection

20

claim fails because Plaintiff has not identified any similarly-situated comparators that were treated more favorably. Plaintiff's equal protection claim also fails because the Town had a rational basis for its actions, and the complaint contains no facts to support a finding that the BOMA reached its conclusions because of personal animus toward Whistle Stop.

Plaintiff's procedural and substantive due process claims fail because Plaintiff has no property or liberty interest in developing the particular property at issue or in utilizing a particular type of wastewater system. Moreover, Plaintiff cannot establish that it was denied any process it was due or that that the Town's actions shock the conscience.

For these reasons, Plaintiff's First Amended Complaint fails to state a claim, and the Town respectfully requests that the Court dismiss the complaint in its entirety with prejudice.

Respectfully submitted,

KLEIN BUSSELL, PLLC

/s/ Allison L. Bussell
ALLISON L. BUSSELL (BPR No. 23538)
1224 6th Avenue North
Nashville, Tennessee 37208
(615) 600-4803
allison.bussell@kleinbussell.com

COOL SPRINGS LAW FIRM

J. Todd Moore (BPR No. 15565)
5115 Maryland Way, Suite 100
Brentwood, Tennessee 37027
(615) 290-5355
todd@coolspringslawfirm.com

*Counsel for Defendant Town of Thompson's Station*

## <u>Certificate of Service</u>

       I hereby certify that a copy of the foregoing has been forwarded via the CM/ECF electronic filing system on this the <u>26th</u> day of June, 2017 to the following:

Joshua R. Denton
FROST BROWN TODD LLC
150 Third Avenue South, Suite 1900
Nashville, TN 37201

Douglas S. Hale
HALE AND HALE, PLC
231 Public Square, Suite 312
Franklin, TN 37064

<u>/s/ Allison L. Bussell</u>
Allison L. Bussell

22