**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
AT NASHVILLE**

| | | |
|---|---|---|
| **WHISTLE STOP FARMS, LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 3:16-2934** |
| **v.** | ) | |
| | ) | **JUDGE CRENSHAW** |
| **THE TOWN OF THOMPSON'S** | ) | **MAGISTRATE JUDGE BROWN** |
| **STATION, TENNESSEE,** | ) | |
| | ) | **JURY DEMAND** |
| | ) | |
| **Defendant.** | ) | |

<u>**WHISTLE STOP FARMS, LLC'S RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS**</u>

Whistle Stop Farms, LLC ("Whistle Stop"), by and through its counsel of record, states

as follows in opposition to the Motion to Dismiss the First Amended Complaint ("Amended

Complaint") filed by Defendant the Town of Thompson's Station, Tennessee (the "Town"):

## I. INTRODUCTION

Whistle Stop has sued the Town pursuant to 28 U.S.C. § 1983 for blatant violations of its

constitutional rights to equal protection and due process. The Town has filed a motion pursuant

to Federal Rule of Civil Procedure 12(b)(6), seeking to shield itself from liability for its personal,

malicious and irrational treatment of Whistle Stop, arguing that it is entitled to dismissal of the

Amended Complaint by claiming that: (i) Whistle Stop's claims are time barred; (ii) Whistle

Stop's equal protection claim fails to identify similarly-situated individuals and because the

Thompson's Station Board of Mayor and Aldermen (the "Board" or "BOMA")[1] has a rational

---

[1] The First Amended Complaint refers to the Board of Mayor and Alderman as the "Board," but the Town's brief
refers to it as "BOMA." To avoid confusion regarding quoted text from either party's documents, the two terms
may be used interchangeably herein.

basis for its decisions; (iii) Whistle Stop's procedural due process claim fails to allege a protected interest and Whistle Stop was not denied notice and opportunity to be heard; and that (iv) Whistle Stop's substantive due process claim fails because Whistle Stop has no viable property interest and the Board's actions do not shock the conscience.

Instead of asking the Court to analyze Whistle Stop's pleadings based on the appropriate standard – whether the Amended Complaint properly states a claim taking all facts as true and drawing all reasonable inferences in favor of the plaintiff – the Town engaged in a lengthy fact-based analysis of Whistle Stop's claims. Under Rule 8 of the Federal Rules of Civil Procedure, and *Twombly* and *Iqbal*, Whistle Stop only needs to show that the allegations state a claim that is plausible on its face—that is, that the allegations, taken as true, allow this Court to draw the reasonable inference that the Town violated Whistle Stop's constitutional rights to equal protection and due process. Accepting all of Whistle Stop's allegations as true and drawing all reasonable inferences in Whistle Stop's favor, the Town's Motion fails and should be denied in its entirety.

## II. RELEVANT FACTS

Whistle Stop's Amended Complaint adequately alleges sufficient facts to withstand the Town's Motion in all respects. As to the accrual of Whistle Stop's claims, the Amended Complaint sufficiently alleges that Whistle Stop did not reasonably become aware of the injuries that form the basis for its claims until September 13, 2016. (*See* Doc. No. 52, ¶¶ 121-25, 131, 134-35). Alternatively, the Town's actions as alleged in the Amended Complaint sufficiently constitute a continuing violation for purposes of the statute of limitations. (*See* Section IV(A)(2), *infra*). Whistle Stop's claim for violations of its right to equal protection is adequately alleged because the Amended Complaint adequately identifies at least three similarly-situated comparators: Two Farms, Williamson County Schools, and Bridgemore. (*See e.g.*, Doc. No. 52,

2

¶¶ 97-103, 153-72). The Amended Complaint is also replete with allegations evidencing the Town's (and its representatives') personal animus and ill will towards Whistle Stop and its principals, as well as the Town's conscience-shocking conduct. (*See e.g.*, *id.* at ¶¶ 16-20, 27-30, 58, 64-65, 75, 88, 103, 108, 136). The Amended Complaint also adequately pleads protected property and/or liberty interests sufficient to support claims for violations of Whistle Stop's right to due process, including without limitation: (i) the tap and capacity allocations approved and conferred on the multi-section residential subdivision development to be known as "Whistle Stop" (the "Development"); (ii) the Grading Permit; and (iii) its right to be free from the Town's arbitrary and irrational decisions. (*See e.g.*, *id.* at ¶¶ 36, 38-40, 48-49, 52-55, 57, 62-63, 6774, 78-80, 85). Finally, the Amended Complaint adequately alleges facts to support the claim that the sham sewer approval process the Town subjected Whistle Stop to was fatally deficient under the due process clause. (*See e.g.*, *id.* at ¶¶ 32-137).

## III. STANDARD OF REVIEW

### A. STANDARD OF REVIEW APPLICABLE TO RULE 12(B)(6) MOTIONS.

According to Rule 8(a)(2), a complaint is only required to contain "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotation marks, citation, and alteration omitted). Consequently, a motion to dismiss filed pursuant to Rule 12(b)(6) should only be granted "when it appears 'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Hamilton Cty. Emergency Commc'ns Dist. v. BellSouth Telecomms., LLC*, 890 F. Supp. 2d 862, 871 (E.D. Tenn. 2012) (quoting *Lewis v. ACB Bus. Servs., Inc.*, 135 F.3d 389, 405 (6th Cir. 1998)).

3

For purposes of considering a motion to dismiss, "the Court construes the complaint in the light most favorable to the plaintiff and assumes the veracity of all well-pleaded factual allegations in the complaint.'" *Id.* (quoting *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 859 (6th Cir. 2007)); *see also In re Travel Agent Comm'n Antitrust Litig.*, 583 F.3d 896, 903 (6th Cir. 2009) (stating that courts must "construe the complaint in the light most favorable to the plaintiff, accept its allegations as true, and draw all reasonable inferences in favor of the plaintiff" (citation omitted)). The complaint must have facial plausibility, which occurs "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). A complaint avoids dismissal under Rule 12(b)(6) if it contains "either direct *or inferential allegations* with respect to all material elements of the claim." *Rogers v. Covenant Health*, 2013 WL 1098004, at *1 (E.D. Tenn. Mar. 15, 2013) (Phillips, J.) (emphasis added).

## IV. LAW AND ARGUMENT

### A. WHISTLE STOP'S CLAIMS ARE NOT TIME BARRED.

The Town correctly states that in determining what statute of limitations applies to a claim brought pursuant to 42 U.S.C. § 1983, federal courts "must borrow the statute of limitations governing personal injury actions in the state in which the section 1983 action was brought." *E.g.*, *Wolfe v. Perry*, 412 F.3d 707, 713-14 (6th Cir. 2005). In Tennessee, the statute of limitations is one year, and it begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action." *Eidson v. Tenn. Dep't of Children's Servs.*, 510 F.3d 631, 635 (6th Cir. 2007) (citing *Kuhnle Bros., Inc. v. Cnty of Geauga*, 103 F.3d 516, 520 (6th

Cir. 1997)).[2]  However, the Town's application of this standard to the facts alleged in Whistle Stop's Amended Complaint is incorrect.

### 1.  The Statute of Limitations Commenced Running on September 13, 2016.

The Town argues that "it is unclear which facts Plaintiff relies on for each claim" because the claims incorporate the detailed, proceeding paragraphs by reference. (Memorandum in Support of Defendant's Motion ("Def.'s Br."), Doc. No. 59 at 8).  However, the Amended Complaint's allegations make it clear when Whistle Stop was alerted that it needed to act to protect its rights stating:

- At the September 13, 2016 Board meeting, Mayor Napier made comments regarding Whistle Stop that are contradictory to requirements the Town must meet pursuant to its TDEC permit;

- At the September 13, 2016 Board meeting, the Board denied the use of the SABRE SBR system that the Town previously approved, applied for and required Whistle Stop to pursue — just after that system was approved by TDEC;

- On September 13, 2016, it became clear that the Town would not allow Whistle Stop to proceed under any set of circumstances; and

- Thereafter – in documents later produced by the Town, certain of which formed the basis for additional detailed allegations in the Amended Complaint[3] – it became clear that the Town was not acting in good faith and had been secretly and expressly plotting against Whistle Stop's Development in bad faith based on ill will and animus towards Whistle Stop and its managing member.

(Doc. No. 52, ¶¶ 121-25, 131, 134-35).  Up until this point, Whistle Stop has been proceeding in good faith with the sewer resolution that the Town mandated it pursue.  (*See e.g., id.*, ¶¶ 32-137). It met the conditions established by the Town for the system the Town had previously approved

---

[2] In the section 1983 context, the Sixth Circuit looks to what event should have alerted the typical layperson to protect his or her rights. *Kuhnle Bros.*, 103 F.3d at 520 (quoting *Dixon v. Anderson*, 928 F.2d 212, 215 (6th Cir. 1991)).

[3] *See* Order, Doc. No. 51, wherein Magistrate Judge Brown granted Whistle Stop's Motion to Amend Complaint, and also found that the Town had waived attorney-client privilege, if any, as to certain purportedly privileged communications produced to Whistle Stop.

5

and, yet, the Town again changed course and purported to revoke its prior approval after TDEC approved the system, which the Town itself had approved and applied for related to the Whistle Stop Development. (*See e.g., id*, ¶¶ 109 – 125).

Common sense dictates a finding that the statute commenced running on September 13, 2016. No reasonable layperson could know that a municipality was violating its rights when that layperson was proceeding in good-faith efforts towards the resolution previously approved and dictated by that same municipality. Further, projects such as the Development almost always proceed through multiple stages of review/approval in which the developer and the municipality work together towards mutually-agreeable final plans. As the allegations in the Amended Complaint detail, Whistle Stop believed it was working towards the mutually-agreeable SABRE SBR sewer system that the Town had already approved and was awaiting approval from TDEC — which approval finally came in July 2016. (Doc. No. 52, ¶¶ 109 – 110) It was not until after that approval that the Town Administrator indicated a preference for Whistle Stop to instead be connected to the Town's regional wastewater facility — to which Whistle Stop also agreed. (*Id*.). In the end, it was at the September 13, 2016, Board meeting that Whistle Stop became aware that the Town's actions were mere pretext, and the Town had no intention of letting Whistle Stop proceed with the Development — whether via a connection to the regional wastewater facility or an on-site sewer system. (Doc. No. 52, ¶ 134). The documents produced by the Town following the September 13, 2016 Board meeting revealed just how expressly the Town had been plotting against the Whistle Stop Development based on ill will and personal animus. As the documents revealed, the Town Administrator believed the whole process to be a game — and one an entity owned by Jesse ("Jay") N. Franks III (Whistle Stop's managing member) – could only win by not playing. (*Id.* at ¶ 136). This ties directly into the Town

Administrator's philosophy as a public official: "It's government .... 'gotcha' is our bread and butter." (*Id.* at ¶ 114). It further tracks with the Town's internally-stated position in April 2016 as to "how [its own internally-proposed timeline for completion of approvals of Whistle Stop's project] could work. ***And if we were dealing with another developer, how it might work.***" (Doc. No. 52, ¶¶ 102 – 103).

The position advocated by the Town runs contrary to controlling law and cannot stand based on the facts alleged in the Amended Complaint. The Town takes the position that each of its actions are "discrete acts," implying that the statute of limitations commences running on each meeting date in which the Development was discussed. (Def's Br., Doc. No. 59 at 9). This would transform the statute of limitations into a "strict liability" statute of limitations. Sixth Circuit authority is clear. The statute begins to run when a typical layperson should be alerted to protect his or her rights. *See Kuhnle Bros.*, 103 F.3d at 520. Furthermore, accepting the Town's argument incentivizes municipalities to secretly undertake illegal and unconstitutional behavior, enter into sham negotiations, application processes and official proceedings with aggrieved parties, to gain approvals from the municipalities in the development process and then drag those applications and approvals out longer than a year to bar any claims. Put simply, no reasonable person could know that his or her rights were being violated while he or she was participating in good-faith municipal proceedings towards what he or she believed to be an approved and agreeable solution — with the municipality internally and secretly plotting against that process all along.

Accordingly, Whistle Stop has adequately alleged sufficient facts to support a determination that the statute did not commence running until September 13, 2016. The Town's Motion should, therefore, be denied.

## 2. Whistle Stop Has Also Adequately Pled Continuing Violations of Its Constitutional Rights to Equal Protection and Due Process.

The Town's actions constitute continuing violations of Whistle Stop's constitutional rights, and its brief misconstrues the applicable law on this issue. Under this doctrine, the Sixth Circuit has recognized two categories of continuing violations: (i) those alleging serial violations; and (ii) those identified with a longstanding and demonstrable policy of discrimination. *See, e.g.*, *Sharpe v. Cureton*, 319 F.3d 259, 266 (6th Cir. 2003). The first category is implicated, for example, where an employer continues to impose disparate work assignments or unequal pay for equal work. *Burzynski v. Cohen*, 264 F.3d 611, 618 (6th Cir. 2001). On the other hand, the second category requires a showing that intentional discrimination against the class of which plaintiff was a member was the entity's "standing operating procedure." *Id.*[4]

The Town's position is that the actions of its Board are "discrete acts that [Whistle Stop] must challenge individually." (Def.'s Br., Doc. No. 59 at 8).[5] Even if that were the case, Whistle Stop's claims clearly are not time barred as detailed in Section IV(A), *infra*. The Town goes on to argue that its actions cannot constitute a continuing violation which is applied "almost exclusively in the context of Title VII discrimination cases." (*Id.* (citing *LRL Props. v. Portage Metro. Housing Auth.*, 55 F.3d 1097, 1105 n.3 (6th Cir. 1995)). The Town, however, ignores subsequent controlling authority on that issue, despite Whistle Stop's citing such authority in its

---

[4] Whistle Stop notes that it is proceeding under what is commonly known as a "class of one" theory. Accordingly, a continuing violation against Whistle Stop requires a showing of intentional discrimination against Whistle Stop itself.

[5] Even a cursory review of the First Amended Complaint reveals that Whistle Stop's pursuit of the Development was an ongoing process—not a series of discrete acts. (Doc. No. 52, ¶¶ 52, 121-25, 131, 134-135). Every appearance before the Board that Whistle Stop made was in pursuit of the Development, specifically to resolve issues surrounding its sewer system. (*Id.*). Describing this process as "discrete acts" simply ignores the allegations in the First Amended Complaint, as well as the nature of any residential development of this size.

8

Response in Opposition to the Town's Motion for Judgment on the Pleadings.[6]  In *Nat'l Parks Conservation Ass'n v. TVA*, the Sixth Circuit acknowledges that continuing violations are most common in the context of Title VII, but goes on to expressly state that, "we nonetheless have applied the continuing violation doctrine to claims for deprivations of civil rights." 480 F.3d 410, 416 (6th Cir. 2007) (citing *Tolbert v. Ohio Dep't of Transp.*, 172 F.3d 934 (6th Cir. 1999) (applying continuing-violation theory in action brought under 42 U.S.C. § 1983 alleging racially discriminatory allocation of highway sound barriers); *Kuhnle Bros., Inc. v. County of Geauga*, 103 F.3d 516 (6th Cir. 1997) (considering continuing-violation doctrine in case involving takings claim and due process claims for deprivations of liberty and property). Accordingly, the continuing violation doctrine is certainly applicable to Whistle Stop's claims for deprivations of its constitutional rights to equal protection and due process.

Applying the doctrine to the facts alleged in the Amended Complaint, which must be accepted as true, the Town's "standing operating procedure" was to intentionally discriminate against the Development, Whistle Stop and its principals. Simply by way of example only, the Amended Complaint alleges:

- The Town believes that Mr. Franks — Whistle Stop's managing member — is responsible for issues/leaks at the Town's regional wastewater treatment plant (Doc. No. 52, ¶ 16);

- Former Town officials have confirmed that: (a) Mayor Napier despises and cannot stand Mr. Franks; (b) Mayor Napier's issues with Mr. Franks are personal; (c) Mayor Napier has regularly disparaged Mr. Franks; and (d) accordingly, Mr. Franks became "persona non grata" within the Town (*Id.* at ¶ 12);

- The Mayor desired — and authorized — the Town's attorney to sue Mr. Franks' company (*Id.* at ¶¶ 17-20);

- The Town admits that "long standing grievances" exist between it and Mr. Franks (*Id.* at ¶ 23);

---

[6](*See* Doc. No. 21 at 8).

9

- The Town Administrator and Mayor contemplated asking Whistle Stop to purchase and gift a $1.1 million property to the Town and asking Mr. Franks personally to gift a thirty-seven (37) acre historic estate in order to resolve the Town's drip capacity issues to resolve those "long standing grievances" (*Id.*);

- The Town believes that Mr. Franks is "probably afraid of us"— referring to the Town and its representatives (*Id.* at ¶ 27);

- The Mayor's reelection campaign materials maligned Mr. Franks, personally blaming him for the regional wastewater plant's issues (*Id.* at ¶¶ 28-30);

- The Town admits that it "can't realistically expire (revoke)" Whistle Stop's initial site plan and that Whistle Stop had vested rights in Phase 1 of the Development, prior to revoking the Sewer Approval (*Id.* at ¶¶ 58, 64);

- The Town Administrator hypothesized ways "to keep development off of 31" (*Id.* at ¶ 65);

- When discussing an affidavit in the Writ of Certiorari proceeding, also pending before this Court (Case No. 3-16-cv-3309), the Town Administrator stated he could "[S]wear to or at just about anything!" (*Id.* at ¶ 75);

- The Mayor has described the development approval procedure in the Town as "the evil process" (*Id.* at ¶ 88);

- A proposed timeline and process internally discussed by the Town Attorney might work if it were any developer other than Whistle Stop (*Id.* at ¶ 103);

- The Town's Mayor publicly stated that he had been looking "for a big stick" with which to hit the developer of a subdivision — and that developer is Mr. Franks (*Id.* at ¶ 108); and

- The Town Administrator stated the only way another development that Mr. Franks is involved in could win in the Town's "game" (*i.e.,* the Town's approval process) is simply not to play. (*Id.* at ¶ 136).

As the Amended Complaint details, these discriminatory actions and statements regarding Whistle Stop, the Development and Mr. Franks occurred internally and secretly. Specifically, these allegations evidence that, while Whistle Stop was proceeding in good-faith efforts to gain approval of a sewer system for the Development, the Town's "standing operating procedure" was to stonewall Whistle Stop at every turn. As the Town Administrator said, "It's government ... 'gotcha' is our bread and butter." (Doc. No. 52, ¶ 114). Accordingly, the Town's

10

arguments that its actions are "discrete acts that [Whistle Stop] must challenge individually" falls flat given that the Town's actions, as alleged in the Amended Complaint, constitute a continuing and overarching pattern of discrimination towards Whistle Stop. Whistle Stop's claims, therefore, are not time-barred.

## B. WHISTLE STOP HAS ADEQUATELY PLED ITS EQUAL PROTECTION CLAIM.

### 1. Equal Protection Clause of the Fourteenth Amendment.

The Fourteenth Amendment to the United States Constitution entitles every person to equal protection under the law. U.S. Const. Amend. XIV, § 1. Federal law provides a cause of action to individuals who have been denied any right, privilege, or immunity secured by the Constitution by an individual or entity acting under color of state law. 42 U.S.C. § 1983. The Equal Protection clause is "essentially a direction that all persons similarly situated should be treated alike." *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 864 (6th Cir. 2012) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 732, 739 (1985)). Whistle Stop's equal protection claim is commonly known as a "class-of-one" challenge, in which it must allege that: (1) it has been intentionally treated differently from others similarly situated; and (2) there is no rational basis for the disparate treatment. *U.S. v. Green*, 654 F.3d 637, 651 (6th Cir. 2011) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

### 2. Whistle Stop Sufficiently Identified Similarly-Situated Comparators.

As to the first prong of a class-of-one claim, the Town argues that Whistle Stop's equal protection claim fails because it has not identified any similarly-situated comparators, relying heavily on the Second Circuit case of *Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55 (2d Cir. 2010). Sixth Circuit authority on the determination of similarly-situated comparators stands in stark contrast to the Second Circuit's test. *Ruston*, 610 F.3d at 59-60. In fact, under controlling Sixth Circuit authority, Whistle Stop has properly alleged similarly-situated

comparators, and the determination of whether any purported differences are material to the analysis is an issue of fact not appropriate at this stage.

The Sixth Circuit "has not yet defined the extent to which individuals must be similarly situated to others in order to maintain" the cause of action. *Green,* 654 F.3d at 651. However, the *Green* Court held "that to be similarly situated, the challenger and his comparators must be '*prima facie* identical in all *relevant* respects or directly comparable in all *material* respects.'" *Id.* (quoting *U.S. v. Moore*, 543 F.3d 891, 896 (7th Cir. 2008)). Courts making this determination "should not demand exact correlation, but should instead seek *relevant similarity*." *EJS. Props., LLC*, 698 F.3d at 864-65 (emphasis added). Whether a characteristic is material "cannot be evaluated in a vacuum." *Trihealth, Inc. v. Bd. of Comm'rs*, 430 F.3d 783, 790 (6th Cir. 2005). It is an "integral element of the rational basis inquiry," and "[d]isparate treatment of similarly situated persons who are dissimilar only in immaterial respects is not rational." *Id.* Finally, and most important for the purposes of the Town's Motion, this Court has concluded that "[w]hether individuals or entities are similarly situated is **generally a question of fact for the jury**." *Primm v. Tennessee Department of Correction*, 3:15-CV-00230, 2017 WL 1210066, at *6 (M.D. Tenn. Mar. 31, 2017) (emphasis added; quoting *JDC Mgmt., LLC v. Reich*, 644 F. Supp. 2d 905, 927 (W.D. Mich. 2009); *Foster v. Spring Meadows Health Care Ctr., LLC*, 3:11-C-01216, 2013 WL 829363, at *5 (M.D. Tenn. Mar. 6, 2013) (refusing to grant summary judgment "on this critical issue 'if a reasonable jury could find that the named comparators were similarly situated'").

Here, Whistle Stop has expressly identified the Two Farms development, Williamson County Schools ("WCS"), and Bridgemore as entities that have received favorable treatment over Whistle Stop and the Development. (Doc. No. 52, ¶¶ 97-103, 153-72). In response, the Town attempts to argue facts – not taking them in the light most favorable to Whistle Stop – to

12

prove that the comparators are just not similar enough. (Def.'s Br., Doc. No. 59 at 12-14). What the Town fails to note is that its analysis makes Whistle Stop's point for it. The Town's attempts to argue the differences among Whistle Stop, Two Farms, WCS and Bridgemore are precisely the type of fact determinations that are entirely inappropriate at this stage of litigation.[7] As this Court has held, the Town's arguments "present a factual question that cannot be resolved on a motion to dismiss." *Permobil, Inc. v. Am. Express Travel Related Servs. Co.*, 571 F. Supp. 2d 825, 841 (M.D. Tenn. 2008).

Finally, the Town's reliance on *EJS Properties* does not support its position. (Def.'s Br., Doc. No. 59 at 13-14). In fact, it cuts directly against the Town's argument because the trial court in *EJS Properties* only made the determination as to whether the two proposed schools were similarly situated *at the summary judgment stage* — after "lengthy discovery." 698 F.3d at 854. Accordingly, *EJS Properties* actually supports that the determination of whether Two Farms, Bridgemore, WCS and others are similarly-situated comparators cannot be made at this juncture, and Whistle Stop should be permitted discovery on this claim.

### 3. Whistle Stop Sufficiently Pled Facts Demonstrating the Town's Lack of Rational Basis.

As to the second prong of a class-of-one claim, the Town argues that Whistle Stop has not pled a lack of rational basis for the Town's disparate treatment of Whistle Stop. The second prong of a class-of-one equal protection claim requires a plaintiff to allege that no rational basis exists for the different treatment the aggrieved party has received. *See e.g.*, *Green*, 654 F.3d at 651. A plaintiff meets this requirement by: (1) negating every conceivable basis which might

---

[7] Although the issue of whether the identified comparators are sufficiently similarly situated is a question of fact that cannot be determined at this stage, Whistle Stop submits that Two Farms, WCS and Bridgemore meet these criteria. The Town's attempts to distinguish these entities are irrelevant because they are sufficiently similar in all material respects (*i.e.*, sewer). Each of these developments is similarly situated with respect to the Town's capacity (or lack thereof) to treat and disperse the resultant wastewater, as alleged in the Amended Complaint.

support the government action; **_or_** (2) by showing that the challenged action was motivated by animus or ill will.  *See e.g.*, *Trihealth*, 730 F.3d at 788.  Here, Whistle Stop has properly pled the lack of rational basis under both methods.

### a.  *Whistle Stop has properly pled ill will and personal animus.*

In its brief, the Town claims that Whistle Stop "has not alleged any facts to support a finding of ill will or animus."  (*See* Def.'s Br., Doc. No. 59 at 15).  However, even a cursory review of the allegations in the Amended Complaint confirms that Whistle Stop has alleged facts sufficient to establish more than a plausible inference that the Town's pattern of treatment was improperly motivated by personal animus and ill will toward Whistle Stop and its managing member.

This Court has held that a class-of-one claim "successfully pass[es] the pleading stage if the alleged facts allow for a *'plausible' inference* that the plaintiff's adverse treatment was *'motivated by personal malice unrelated to the defendant's official duties.'*" *Arnold v. Metro Gov't of Nashville & Davidson Cnty.*, Civil Action No. 3:09-cv-0163, 2009 WL 2430822, at *4 (M.D. Tenn. Aug. 6, 2009) (quoting *Klimik v. Kent Cnty. Sheriff's Dep't*, 91 Fed. Appx. 396, 401 (6th Cir. 2004) (emphasis supplied)). *See also Bower v. Vill. of Mount Sterling*, 44 Fed. Appx. 670 (6th Cir. 2002) (a *prima facie* "class of one" claim is established if a mayor appoints two prospective officers similarly situated to the plaintiff by the normal appointment procedure, but strays from the established hiring policy in order to allegedly spite the plaintiff for his parents' political views); *Warren v. City of Athens*, 411 F.3d 698 (stating in dicta that if properly before the Court, the city's placement of barricades around the plaintiffs' business might have constituted a "class of one" violation because the plaintiffs' son defeated the city prosecutor in a prior election for a higher office); *but see Arnold,* 2009 WL 2430822 at *5 (dismissing complaint where – unlike in Whistle Stop's Amended Complaint – the plaintiffs had not alleged a "prior

14

history of animus and malicious motivation" for the disparate treatment claimed).  Additionally, as the Sixth Circuit and this Court have repeatedly recognized, the question of whether discriminatory animus exists is an issue of fact to be determined by a jury and cannot be made at this stage.  *See Johnson v. University of Cincinnati*, 215 F.3d 561, 577 (6th Cir. 2000); *see also Booker v. Budget Rent-A-Car Sys.*, 17 F. Supp. 2d 735, 745-46 (M.D. Tenn. 1998).

Here, Whistle Stop's equal protection claim is grounded in the personal animus and ill will demonstrated by the Town, its Mayor and other representatives towards Whistle Stop, the Development and Whistle Stop's managing member.  (*See* Section IV(A)(2), *supra*).  Whistle Stop alleges far more facts supporting personal animus and ill will than in *Bower*, where the Sixth Circuit found that allegations about the mayor's retaliation against plaintiff through manipulation of the village police force's hiring process due to plaintiff's family ties to his political opponent were sufficient to state an independent equal protection claim.  *Bower*, 44 Fed. Appx. at 678.  Indeed, as addressed *infra*, Whistle Stop has alleged the type of "prior history of animus and malicious motivation" that was missing from *Arnold*, including numerous of paragraphs with direct quotes from the Town's officials plotting against Whistle Stop. *Arnold*, 2009 WL 2430822, at *5.  Put simply, Whistle Stop's allegations taken as true clearly raise a plausible inference that the Town and its representatives were motivated by personal animus and ill will harbored towards Whistle Stop and its managing member.

Instead of addressing the numerous examples of animus and ill will alleged in the Amended Complaint, the Town glosses over them claiming they are mere "editorializing and conclusions couched as allegations" and that Whistle Stop makes no connection between the "personal feelings" and BOMA's actions.  (Def.'s Br., Doc. No. 59 at 17).  In support of this position, the Town cites the introductory clause of a few clear examples of animus and ill will by

15

its officials yet omits the actual *quotes* that are the substance of the allegations in the cited paragraphs.[8]  The Town seeks to create confusion about the relationship between these Town officials at issue — namely, the Town Attorney and the Town Administrator — and BOMA.  However, as demonstrated by numerous allegations in the Amended Complaint, all of which must be taken as true, the Town officials who harbor the so-called "personal feelings" toward Mr. Franks and Whistle Stop directly *advise,* work with and on behalf of BOMA on key decisions, including the ones at issue in this lawsuit.  As such, any argument that their animus and ill will existed without impacting BOMA's decisions is entirely baseless.

Regardless, the Amended Complaint is far from limited to examples of animus and ill will by BOMA's advisors and staff.  Instead, the Amended Complaint includes numerous allegations of Mayor Napier's own ill will and animus toward Whistle Stop and its managing member.  For example:

- The Town Administrator, acknowledging bias against Whistle Stop's managing member, discussed with Mayor Napier options for Whistle Stop that would allow them to put "some long standing grievances" behind them (*Id.,* ¶ 23);

- As stated above, former Town officials have confirmed that: (a) Mayor Napier despises and cannot stand Mr. Franks; (b) Mayor Napier's issues with Mr. Franks are personal; (c) Mayor Napier has regularly disparaged Mr. Franks; and (d) accordingly, Mr. Franks became "persona non grata" within the Town (*Id.,* ¶ 12);

- "At least one Town official has confirmed that Mayor Napier believed it was more important to 'slap Jay [Franks] around and stop development" than to do what was best for the Town" (*Id.,* ¶ 25);

---

[8] For example, the Town cited to a portion of Paragraph 64, where Whistle Stop alleges that the Town admitted their treatment is contrary to the law ("Consistent with this, in late October 2014, the Town Attorney expressly admitted that Whistle Stop does have vested rights in Phase 1 of the Development, admitting 'our position is that Whistle Stop has no vested other than for the first phase.'  He then proposed ordinance amendments to help bolster the Town's after-the-fact argument that Whistle Stop could have no vested rights in the rest of the Development.  In doing so, he expressly conceded 'the law is not clear how [vested rights] applies to previously approved (in our case) site development plans.").  Of course, the Town later purports to revoke the Town's approvals related to Whistle Stop's rights in the Development, including as to Phase 1.  (Doc. No. 52, ¶ 72).  Likewise, the Town quotes the majority of Paragraph 114, but conveniently omits the direct quote from the Town Administrator where he describes his philosophy as a government officer as follows: "It's government … 'gotcha' is our bread and butter."

16

- The Mayor desired — and authorized — the Town's attorney to sue Mr. Franks' company (*Id.* ¶¶ 17-20);

- Mr. Franks actively campaigned against Mayor Napier in the 2014 mayoral election (*Id.* ¶¶ 28-31).

Accordingly, there is nothing "conclusory" or "speculative" about the Amended Complaint's detailed and specific allegations that the Town's decisions were motivated by personal animus and ill will. The Amended Complaint not only cites to numerous examples of personal animus and ill will toward Whistle Stop and its managing member by the Town, the Mayor and its officials, but also includes clear factual allegations regarding how that animus and ill will affected the decision-making process. As such, the Town's Motion should be denied.

### b. *Whistle Stop has pled facts to negate the Town's claimed rational basis.*

While it is unnecessary for Whistle Stop to negate every conceivable rational basis for the Town's actions given the clear animus and ill will outlined above,[9] the allegations in Whistle Stop's Amended Complaint also adequately negate each of the Town's purportedly rational reasons for its disparate treatment of Whistle Stop, as set forth in its Motion.

While the Town touts that Whistle Stop's burden of negating every conceivable rational basis as an "uphill climb" (*see* Def. Br., Doc. No. 59, at 11, citing *In re Detroit,* 841 F.3d 684, 701 (6th Cir. 2016)), Sixth Circuit authority demonstrates that the burden can be easily met. *See Bower v. Village of Mount Sterling,* 44 Fed. Appx. 670 (6th Cir. 2002)). In *Bower,* cited by *In re Detroit,* the plaintiff successfully pled his equal protection claim by pleading facts that, if found to be true, would negate the two most-likely non-discriminatory reasons for his failure to be promoted: (1) a past complaint of sexual harassment; and (2) his supervisor's claim that it was

---

[9] A plaintiff meets the requirement of pleading a lack of rational basis by *either*: (1) negating every conceivable basis which might support the government action; **or** (2) by showing that the challenged action was motivated by animus or ill will. *See e.g.*, *Trihealth*, 730 F.3d at 788.

not a council function to hire full-time officers. In short, he alleged that the first likely reason was pretext for failure to promote because he had been hired as a reserve, part-time employee by the same employer *after* the complaint was made, and that the second likely reason was pretext because it was contrary to the law. The *Bowers* court found that these allegations adequately stated a claim for an equal protection violation. *Id.* at 678.

Here, the Town's brief essentially identifies two purportedly rational reasons for its disparate treatment of Whistle Stop.[10] First, the Town claims that BOMA was justified in "rejecting the proposed, untested on-site system over which TDEC even distanced itself," a characterization of TDEC's opinion not represented in the Amended Complaint. (*Id.* at 14-15). Second, the Town claims it lacked sufficient drip field capacity to accommodate the Development and that any disparate treatment between Whistle Stop and Two Farms, WCS, or Bridgemore is justified by the "inherently public benefit to the Town and its citizenry" provided by the latter. (*Id.*). As in *Bowers,* Whistle Stop has alleged facts that, taken as true, completely negate both of these purported rational reasons.

First, as to its decision not to approve the SBR system, the Town's purported rational reason (that it was "untested" and that TDEC "distanced itself" from the system – neither of which are alleged in the Amended Complaint) is negated by Whistle Stop's ample allegations regarding the Town's decisions related to the system. (*See e.g.,* Doc. No. 52 ¶¶ 89-91, 109-115, 119, 131-132). In particular, the Amended Complaint alleges that the Town recommended and insisted upon the particular SBR system (while acknowledging that it was a new system), approved that system conditioned only on TDEC's approval, and actually applied to TDEC for

---

[10] In its brief, the Town identifies its "rational basis" for its disparate treatment and analyzes those reasons as if the parties were before the Court on a motion for summary judgment. (Def.'s Br., Doc. 59 at 14-15). While Whistle Stop contends that such analysis is wholly inappropriate at this stage, the Town's arguments do provide helpful context to demonstrate that Whistle Stop has, in fact, alleged facts that negate each "rational basis" the Town claims justifies its actions.

approval of it. (*Id.* at ¶¶ 82, 88-91, 115). It was only after TDEC *approved* the SBR system that the Town Administrator changed course and stated that connection to the Town's regional system would be "possible and actually preferable." (*See id.,* ¶¶ 109-111, 120-121). Moreover, after attempting to revoke its prior approval of the SBR system and arguing for Whistle Stop to apply to use the Town's regional system at some unspecified future date, the Town instructed Whistle Stop that it must consider a plan involving a different, unidentified SBR system. (*See id.,* ¶ 109-110, 131-132). In short, the Amended Complaint alleges that the Town did not actually reject Whistle Stop's plan due to its concerns about the SBR system, but because it desired to delay or completely derail the Development. (*See e.g., id.* ¶ 112-115).

Second, the Amended Complaint also contains numerous allegations negating the Town's claim that its actions are justified by its purported lack of drip field capacity. (*See* Doc. No. 52, ¶¶ 89 – 137). Indeed, Whistle Stop alleges that it proposed two different plans to the Town to address any claim of lack of drip capacity, neither of which were approved by the Board as to Whistle Stop, but which were deemed acceptable as to other applicants. (*See e.g. id.,* ¶¶ 116-132, demonstrating that the Town rejected plans (i) where Whistle Stop would reduce the size of its development to use its own land for a drip field for the Development and allow the Town to use excess drip field for free, and (ii) where Whistle Stop would simply wait to receive access to the regional system until the Town had sufficient drip field capacity – all while the Town proposed or approved plans similar or less favorable to the Town made by other applicants). For example, in Paragraph 128, Whistle Stop alleged that the Town was willing to allocate additional sewer capacity for another applicant so long as the net effect on drip field capacity was positive for the Town, and was also willing to compensate the other applicant for any excess drip field. Paragraph 129 goes on to state that "Whistle Stop's sewer request, on the

19

other hand, was rejected outright as not viable even though it: (i) completely provided sufficient drip field capacity to cover the Development; (ii) offered the excess drip field capacity to the Town; and (iii) offered this excess drip field capacity to the Town for free." (Doc. No. 52, ¶¶ 128 -129).

Accordingly, the Amended Complaint sufficiently alleges facts that, if true, demonstrate the Town's stated reasons are merely pretext for derailing Whistle Stop's development. Whistle Stop has, therefore, properly stated its equal protection claim and the Town's motion should be denied.

### C. WHISTLE STOP HAS ADEQUATELY PLED ITS DUE PROCESS.

#### 1. Due Process Clause of the Fourteenth Amendment

The Fourteenth Amendment also protects individuals from the deprivation "of life, liberty, or property without due process of law." U.S. Const. Amend. XIV, § 1. The clause has both a substantive and a procedural component. Procedural due process is traditionally viewed as the requirement that the government provide a "fair procedure" when depriving someone of life, liberty, or property, and substantive due process "protects individual liberty against certain government actions regardless of the fairness of the procedures used to implement them." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). Whistle Stop's Amended Complaint adequately pleads claims for violations of both its rights to procedural and substantive due process.

#### 2. The Town Violated Whistle Stop's Rights to Procedural Due Process.

To make out a claim for violation of procedural due process, the plaintiff has the burden of showing that "(1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest." *EJS Props., LLC v.*

20

*City of Toledo*, 698 F.3d 845, 855 (6th Cir. 2012), citing *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006). "[T]he fundamental requirement of procedural due process is that an individual be given an opportunity to be heard at a meaningful time and in a meaningful manner." *Systematic Recycling LLC v. City of Detroit*, 635 Fed. Appx. 175, 183 (6th Cir. 2015) (quoting *Morrison v. Warren*, 375 F.3d 468, 475 (6th Cir. 2004)).

### a. Whistle Stop Possesses Protected Liberty and Property Interests.

The existence of a property interest for purposes of a due process claim—procedural or substantive—is traditionally a question of state law. *EJS Properties.*, 698 F.3d at 855-56; *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). Similarly, while liberty interests protected by the due process clause "are a bit more difficult to define . . . they, too, may be creatures of state law, or of the Due Process Clause itself." *McGuire v. Ameritech Servs.*, 253 F. Supp. 2d 988, 1004 (S.D. Ohio 2003); *see also Roth*, 408 U.S. at 571 (recognizing that "liberty" is an amorphous concept, but stating, "In a Constitution for a free people, there can be no doubt that the meaning of 'liberty' must be broad indeed.").

The Sixth Circuit has recognized that a property owner has an "interest in a discretionary benefit, such as a re-zoning ordinance, after it is conferred." *EJS Props.*, 698 F.3d at 856. Furthermore, both the Sixth Circuit and the State of Tennessee recognize that individuals "have a substantive due process right not to be subjected to arbitrary or irrational zoning decisions." *Consol. Waste Sys., LLC v. Metro Gov't of Nashville*, No. M2002-02582-COA-R3-CV, 2005 WL 1541860, at *5 (Tenn. Ct. App. June 30, 2005); *Paterek v. Vill. of Armada*, 801 F.3d 630, 648 (6th Cir. 2015) (both citing *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1217 (6th Cir. 1992)). Accordingly, this interest is entitled to procedural due process protection as well. *See Range v. Douglas*, 763 F.2d 573, 588 n.6 (6th Cir. 2014) (stating the class of interests protected by substantive due process is narrower than those protected by procedural due process).

Among others, Whistle Stop has protected interests in: (i) the tap fees and sewer capacity allocated to the Development that were subsequently improperly revoked; (ii) the Grading Permit; and (iii) the right to be free from the Board's arbitrary and irrational decisions.[11] As alleged in the Amended Complaint, Whistle Stop was approved to connect Phase 1's 46 lots to the Town's wastewater treatment facility and was (and remains) allocated sewer capacity for 343 lots in the Development. The Town argues that decisions on sewer are "wholly discretionary." (Def.'s Br., Doc. No. 59 at 17). In that case, Whistle Stop was granted this discretionary benefit, and, therefore, it possesses a protected interest in same. Similarly, the issuance of the Grading Permit is a benefit that was conferred on Whistle Stop and revoked without sufficient procedural due process. Finally, as detailed *supra*, a reading of the allegations in the Amended Complaint reveals that Whistle Stop has adequately pled the myriad arbitrary and irrational decisions of the Town and its Board.

**b. Whistle Stop Was Deprived of Its Protected Interests in Violation of the Due Process Clause.**

Whistle Stop's Amended Complaint adequately alleges that the Town violated its right to procedural due process. Procedural due process is not satisfied when a person has a protected interest under the Due Process Clause and the individual responsible for deciding whether to deprive that person of his interest is biased. *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 566 (6th Cir. 2011) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975) (stating that "a biased decisionmaker [sic] [is] constitutionally unacceptable"). Submission to a fatally biased decision-making process is in itself a constitutional injury. *Hammond v. Baldwin*, 866 F.2d 172, 176 (6th Cir. 1989). "The injury is the submission itself; the biased (or potentially) biased decision may

---

[11] By way of example, Whistle Stop alleged that the Town subjected it to arbitrary and irrational decisions with respect to the sewer approval procedure. (Doc. No. 52, ¶¶ 109-137).

also result in injury, but it is a separate, distinct one." *Id.* The administrative process requires the appearance of fairness and the absence of a probability of outside influences; it does not require proof of actual partiality. *Id.*

The Amended Complaint certainly alleges that the Town, its Mayor and its Board are unconstitutionally biased against Whistle Stop, the Development and its managing member. These allegations have been restated throughout this response. (*See* Section IV(A)(2), *supra*). Taking those allegations as true, Whistle Stop sufficiently alleges that it has been deprived of its right to procedural due process. To paraphrase, the Town considers the process that Whistle Stop is constitutionally entitled to is a "game" and the only way for Whistle Stop and its managing member to win is to not play. (Doc. No. 52, ¶ 136).

The Town goes through pains to argue that Whistle Stop "was not denied the right to develop a particular type of wastewater treatment system without due process." (Def.'s Br., Doc. No. 59 at 19). As alleged in the Amended Complaint, this is completely inaccurate.

Whistle Stop's pursuit of sewer approval was in itself a constitutional injury because the Town (via its staff, Town Attorney, Board and Mayor) is a fatally biased decision-maker. Furthermore, the Town cannot reasonably point to "deep cell, long duration aerate lagoon treatment followed by irrigation" as its preferred sewer system to justify its actions. (*Id.*) This is due simply to the fact that the Town expressly stated its preference for alternative sewer systems. For example, the Town publicly stated its desire for the Development to hook on to the Town's regional wastewater system when Whistle Stop was willing to wait until the Town had sufficient capacity pursuant to its TDEC permit. (Doc. No. 52, ¶ 122). Additionally, the SABER SBR sewer system—applied for by the Town and approved by TDEC — was the Town's express choice, and Whistle Stop pursued it on the Town's express direction. (*Id.* at ¶¶ 90-91, 109, 112,

23

115-16, 119, 124). Much like a developer in the case of *Nasierowski Bros. Inv. Co. v. Sterling Heights*, 949 F.2d 890, 865 (6th Cir. 1991), Whistle Stop pursued the SABER SBR system "consistent with [its] legitimate expectations — expectations that the [Town], itself, had encouraged." While the plaintiff in *Nasierowski Brothers* was unconstitutionally afforded no procedure, Whistle Stop was unconstitutionally afforded a *fatally biased* procedure with (unbeknownst to it) zero chance of success.

### 3. The Town Violated Whistle Stop's Rights to Substantive Due Process.

Substantive due process claims raised in land use contexts, such as zoning regulations, require a plaintiff to show "that (1) a constitutionally protected property or liberty interest exists, and (2) the constitutionally protected interest has been deprived through arbitrary and capricious action." *EJS Props., LLC*, 698 F.3d at 855 (citing *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 573 (6th Cir. 2008)). [12] Two types of substantive due process challenges exist: (1) deprivations of a particular constitutional guarantee (*i.e.,* a fundamental right); and (2) actions that "shock the conscience." *See e.g. id.* at 861.

The Amended Complaint adequately alleges conscience-shocking behavior. The Town's token defense to Whistle Stop's allegations on this point is the sole statement that "there are no Town actions at issue in Plaintiff's First Amended Complaint that even arguably qualify as 'conscience-shocking' for purposes of federal law." (Def.'s Br., Doc. No. 59 at 20). This argument fails because the Amended Complaint clearly alleges behavior that is sufficient to satisfy this standard.

Furthermore, whether conduct "reaches the level of conscience shocking depends upon the facts and circumstances of the individual case." *Ewolski v. City of Brunswick*, 287 F.3d 492,

---

[12] Because Whistle Stop has previously identified protected interests, it now only addresses the second requirement of a substantive due process claim. *See* Section IV(C)(2)(a), *supra*.

510 (6th Cir. 2002); *see also Fields v. Abbott*, No. 07-4136-CV-C-MJW, 2010 WL 3516199, at

*1 (W.D. Mo. Aug. 31, 2010) (stating that establishing conscience-shocking conduct "involves a

question of fact, rather than a question of law"). As this is a question of fact, it is improper for

determination at this stage, and the Town's Motion should be denied.

## V. CONCLUSION

For the foregoing reasons, and taking the allegations contained in Whistle Stop's

Amended Complaint as true, this Court should deny the Town's Motion to Dismiss because: (i)

Whistle Stop's claims are not time-barred in any way; and (ii) Whistle Stop has adequately

alleged claims pursuant to 42 U.S.C. § 1983 for violations of its rights to equal protection,

procedural due process, and substantive due process.

Respectfully submitted,

*s/ Joshua R. Denton*
Joshua R. Denton
Tonya J. Austin
FROST BROWN TODD LLC
150 Third Avenue South, Suite 1900
Nashville, TN 37201
(615) 251-5550 (Telephone)
(615) 251-5551 (Facsimile)
jdenton@fbtlaw.com
taustin@fbtlaw.com

*and*

Douglas S. Hale, No. 6669
HALE AND HALE, PLC
231 Public Square, Suite 312
Franklin, Tennessee 37064
(615) 794-1312 (Telephone)
(615) 790-9236 (Facsimile)
Dhale@haleandhale.com

*Counsel for Plaintiff Whistle Stop Farms, LLC*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 24, 2018, the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's electronic filing system.

Allison L. Bussell
1224 6th Avenue North
Nashville, TN 37208
allison.bussell@kleinbussell.com

J. Todd Moore
5115 Maryland Way, Suite 100
Brentwood, TN 37027
todd@coolspringslawfirm.com

*Counsel for the Town of Thompson's*
*Station & the Board of Mayor and Aldermen*
*of the Town of Thompson's Station*

*s/ Joshua R. Denton*
FROST BROWN TODD LLC

0138893.0661669  4852-1352-6124v6