UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WHISTLE STOP FARMS, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 3:16-cv-02934 |
| ) | CHIEF JUDGE CRENSHAW |
| THE TOWN OF THOMPSON ) | |
| STATION, TENNESSEE ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION**

Whistle Stop Farms, LLC ("Whistle Stop") brings this action against the Town of Thompson Station, Tennessee (the "Town") alleging substantive and procedural due process and equal protection violations under Section 1983. Before the Court is the Town's Motion to Dismiss (Doc. No. 58). For the reasons set forth below, the motion is granted in part and denied in part.

**I. Factual Allegations**

This lawsuit arises from Whistle Stop's attempts to develop a residential subdivision within the Town. (Doc. No. 52 ¶ 1.) Whistle Stop's managing member is Jesse N. Franks III, who has been involved in other developments in the Town. (Doc. No. 52 ¶ 11.) The Town's Mayor, Corey Napier, has personal issues with Mr. Franks, who he despises. (Id. ¶¶ 8, 12.)

On December 4, 2012, Whistle Stop purchased 142 acres of real property in the Town to develop a residential subdivision (the "Development"). (Id. ¶ 21.) On October 22, 2013, the Town's Planning Commission approved, with contingencies, the preliminary plat for Phase I of the Development and specifically approved connecting the 46 lots in Phase I to the Town's Heritage Commons wastewater treatment facility. (Id. ¶ 36.) On November 15, 2013, Whistle

Stop paid for sewer tap fees for Phase I, capacity allocation fees for all lots in the Development, and a preliminary plat fee. (Id. ¶ 38.) The Town later issued Whistle Stop a grading permit for Phase I, and the Tennessee Department of Environment and Conservation Division of Water Pollution Control ("TDEC") approved Phase I for construction. (Id. ¶¶ 55-56.)

In July 2014, Town staff informed Whistle Stop that approvals for the Development were improperly issued and that it needed to obtain Town approval for a revised plan. (Id. ¶ 60.) The Town Administrator, Joe Cosentini, later told Whistle Stop that the Board would have to reconsider the original request for sewer connection, which the Planning Commission had approved rather than the Board. (Id. ¶¶ 34, 36, 68.) At its February 10, 2015 meeting, the Board revoked approval for the 46 taps in Phase I of the Development and stated that it wanted to "start all over from the top on Whistle Stop." (Id. ¶ 72.)

Whistle Stop thereafter filed a Petition for a Writ of Certiorari and Writ of Supersedeas (the "Certiorari Action") in Williamson County Chancery Court, asserting that the Board lacked authority or exceeded its jurisdiction in revoking the Development's approvals. (Id. ¶ 73.)[1] Whistle Stop alternatively argued that the Town's action was arbitrary, capricious, or unsupported by material evidence. (Id.)

During the pendency of the Certiorari Action, the parties agreed to stay those proceedings so they could explore possible resolutions. (Id. ¶ 76.) Whistle Stop alleges that the Town was to use this process to continue advancing Mayor Napier's animus towards Mr. Franks and any of his projects. (Id.) During the settlement process, the parties began meeting to discuss possible on-site wastewater solutions for the Development. (Id. ¶¶ 79-80.) Because the Town claimed on-site

---

[1] The Certiorari Action has since been removed to federal court as a related case. See Whistle Stop Farms, LLC v. Board of Mayor and Aldermen for Thompson's Station, Tennessee, et. al., No. 3:16-cv-03309 (M.D. Tenn.).

2

sewer systems were now required, the Town argued the Development's design needed to be reworked. (Id. ¶ 80.)

Whistle Stop thereafter proposed a revised concept plan that reduced the number of lots from 343 to 164 to accommodate an on-site system. (Id. ¶¶ 80-81, 83.) At the October 13, 2015 meeting, the Board authorized Town staff to pursue approval from TDEC for what is known as a SABRE Sequencing Batch Reactor ("SBR") wastewater system for the Development. (Id. ¶ 86.) Mr. Cosentini memorialized the Board's approval of the SABRE SBR system through correspondence with Whistle Stop's land planner. (Id. ¶ 90.) Whistle Stop submitted its revised concept plan to the Board at its January 12, 2016 meeting. (Id. ¶ 92.) The Board approved the plan on first reading of Ordinance 2016-001, conditioned upon Whistle Stop meeting the Town's requirements for approval, including final approval of its proposed wastewater system. (Id.)

On May 24, 2016, the Town's Planning Commission considered Plaintiff's preliminary plat. (Id. ¶ 104.) Town staff recommended that the Planning Commission deny the request because of Whistle Stop's need to obtain wastewater approval and meet the conditions outlined in Ordinance 2016-001. (Id.) The Planning Commission then denied the request for a preliminary plat. (Id.)

On August 26, 2016, Whistle Stop's counsel wrote the Town Administrator, Town Counsel, and the Board asking to be placed on the agenda for the Board's September 13, 2016 meeting for approval to proceed with the Development using the SABRE SBR system. (Id. ¶ 116.) The letter alternatively requested approval for the Development to connect to the Town's existing regional wastewater treatment system. (Id. ¶ 117.) At the September 13, 2016 Board meeting, the Board made a motion, which was unanimously approved, to direct Whistle Stop to select an alternative SBR system. (Id. ¶ 131.)

3

## II. Standard of Review

For purposes of a motion to dismiss, the Court must take all of the factual allegations in the complaint as true. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Id. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Id. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Id. at 679. A legal conclusion couched as a factual allegation need not be accepted as true on a motion to dismiss, nor are recitations of the elements of a cause of action sufficient. Fritz v. Charter Township of Comstock, 592 F.3d 718, 722 (6th Cir. 2010).

## III. Analysis

### A. Whether the Claims Arising Before November 2015 are Time-Barred

The Town argues that the claims arising prior to November 2015 should be dismissed because they are time-barred. The applicable state statute of limitations governs a Section 1983 action alleging a violation of civil rights or personal injuries. Laney Brentwood Homes, LLC v. Town of Collierville, 144 F. App'x 506, 509 (6th Cir. 2005). Tennessee requires the filing of such actions within one year after the cause of action has accrued. Id. (citing Tenn. Code Ann. §§ 28-3-104(a)(1) and (a)(3)). The accrual date of a Section 1983 claim is a question of federal law. Wallace v. Kato, 549 U.S. 384, 388 (2007). The statute of limitations begins to run "when the plaintiff knows or has reason to know of the injury which is the basis of his action." See Kuhnle Bros., Inc. v. County of Geauga, 103 F.3d 516, 520 (6th Cir. 1997) (quoting Sevier v. Turner, 742

F.2d 262, 273 (6th Cir. 1984)). In Section 1983 cases, courts "look to the event that should have alerted the typical lay person to protect his or her rights." Trzebuckowski v. City of Cleveland, 319 F.3d 853, 856 (6th Cir. 2003).

The Town argues that the statute of limitations commenced running on the date of each Board action and therefore any claims arising out of Board actions in February, September, and October 2015 are time-barred because Whistle Stop filed its action on November 18, 2016. Whistle Stop, however, argues that the statute of limitations began to run on September 13, 2016. Specifically, Whistle Stop alleges that Whistle Stop was not alerted that it needed to act to protect its rights until the Board's September 13, 2016 meeting. In this meeting, the Board denied the use of the SABRE SBR system that it previously approved, even though it required Whistle Stop to pursue the system and TDEC approved it. (See Doc. No. 52 ¶¶ 124, 131.)

The Board's denials of approvals for the Development are the basis for Whistle Stop's alleged injuries. (See id. ¶¶ 175, 180.) Therefore, Whistle Stop knew or had reason to know of its alleged injuries when the denials occurred. That Whistle Stop filed another lawsuit in March 2015, which was later removed to this Court, challenging the Board's February 2015 revocation of 46 sewer taps for Phase I further bolsters this conclusion. See Whistle Stop Farms, LLC v. Board of Mayor and Aldermen for Thompson's Station, Tennessee, et. al., No. 3:16-cv-03309 (M.D. Tenn.).[2] Accordingly, any claims that are based on the Town's denials of approval before November 18, 2015 are time-barred unless an exception to the statute of limitations applies.

Whistle Stop argues that the continuing violation doctrine saves any portion of its claims outside the statute of limitations. The running of the limitations period can be tolled under the

---

[2] A court may take judicial notice of other court proceedings when ruling on a motion to dismiss under Rule 12(b)(6) without converting the motion into one for summary judgment. Buck v. Thomas M. Cooley L. Sch., 597 F.3d 812, 816 (6th Cir. 2010).

5

"continuing violation" doctrine. Sharpe v. Cureton, 319 F.3d 259, 266 (6th Cir. 2003). The Sixth Circuit uses this doctrine "most commonly in Title VII cases, and rarely extends it to § 1983 actions." Id. at 267. The Sixth Circuit has recognized two categories of continuing violations: (1) those alleging serial violations; and (2) those alleging a "longstanding and demonstrable policy of discrimination." Id. at 268.

In National R.R. Passenger Corp. v. Morgan, 536 U.S. 101 (2002), the Supreme Court limited the use of the serial continuing violations theory when applied to discrete discriminatory acts. The Supreme Court held that "[e]ach incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable 'unlawful employment practice.'" Id. at 114. Thus, each discrete act starts a new clock for filing charges regarding that act. See id. The Supreme Court, however, did not disturb the second category of continuing violations. See Sharpe, 319 F.3d at 268 ("The second category of continuing violations, involving a longstanding and demonstrable policy of discrimination, is not implicated by Morgan."). In order to establish a longstanding and demonstrable policy of discrimination, the plaintiff "must demonstrate something more than the existence of discriminatory treatment in his case." Austion v. City of Clarksville, 244 F. App'x 639, 647 (6th Cir. 2007). The employer's "standing operating procedure" must include "intentional discrimination against the class of which plaintiff was a member." Id. (citing Sharpe, 319 F.3d at 269).

Here, Whistle Stop's alleged injuries are tied to discrete acts—the Town's specific denials of approval for the Development. Consequently, each act starts a new clock for filing claims regarding it. In addition, Whistle Stop has merely alleged the existence of discriminatory treatment in his case but not against a class of which it was a member. Whistle Stop itself states that "it is proceeding under . . . a 'class of one' theory." (Doc. No. 65 at 8.) This is insufficient to constitute

a continuing violation. See, e.g., Sharpe, 319 F.3d at 268-69 (holding that the "longstanding and demonstrable policy of discrimination" continuing violation exception did not apply because the plaintiffs neither represented a class nor otherwise demonstrated class-wide discriminatory action); Froling v. City of Bloomfield Hills, No. 12-12464, 2013 WL 2626618, at *5 (E.D. Mich. June 11, 2013) ("Even if the acts could be considered to constitute a longstanding policy of discrimination, the Plaintiffs have not alleged that the claimed act of discrimination is aimed at any class of which they are a member. Consequently, the second category of a continuing violation is not applicable here."). Accordingly, to the extent the claims arise out of the Town's denials of approvals for the Development before November 18, 2015, they are dismissed with prejudice.

### B. Due Process Claim (Count I)

#### 1. Substantive Due Process

The substantive due process doctrine establishes that "'governmental deprivations of life, liberty or property are subject to limitations regardless of the adequacy of the procedures employed.'" Range v. Douglas, 763 F.3d 573, 588 (6th Cir. 2014) (quoting Pearson v. City of Grand Blanc, 961 F.2d 1211, 1216 (6th Cir. 1992)). This doctrine protects a narrow class of interests, including those enumerated in the Constitution, those so rooted in the traditions of the people as to be ranked fundamental, and the interest in freedom from government actions that shock the conscience. Id. It also protects the right to be free from arbitrary and capricious governmental actions, which is another formulation of the right to be free from conscience-shocking actions. Id. "Substantive-due-process claims are 'loosely divided into two categories: (1) deprivations of a particular constitutional guarantee; and (2) actions that shock the conscience.'" Doe v. Miami Univ., 882 F.3d 579, 597 (6th Cir. 2018) (quoting Valot v. Se. Local Sch. Dist. Bd. of Educ., 107 F.3d 1220, 1228 (6th Cir. 1997)); Garner v. Harrod, 656 F. App'x

7

755, 761 (6th Cir. 2016) ("To prove a § 1983 substantive due process claim, the plaintiffs would need to establish either (1) deprivations of a particular constitutional guarantee, or (2) government actions that shock the conscience." (internal quotation marks omitted)).

Whether a person has a "property" interest is traditionally a question of state law. EJS Props., LLC v. City of Toledo, 698 F.3d 845, 855 (6th Cir. 2012). However, federal constitutional law determines whether that interest rises to the level of a legitimate claim of entitlement protected by the Due Process Clause. Id. at 856 (citing Town of Castle Rock v. Gonzales, 545 U.S. 748, 757 (2005)). "[A] party cannot possess a property interest in the receipt of a benefit when the state's decision to award or withhold the benefit is wholly discretionary." Med Corp., Inc. v. City of Lima, 296 F.3d 404, 409 (6th Cir. 2002) (citing Richardson v. Township of Brady, 218 F.3d 508, 517 (6th Cir. 2000)). However, "[p]roperty owners . . . have an interest in a discretionary benefit, such as a re-zoning ordinance, after it is conferred." EJS Props., 698 F.3d at 856 (citing Buckeye Cmty. Hope Found. v. City of Cuyahoga Falls, 263 F.3d 627, 642 (6th Cir. 2001)).

Here, Whistle Stop plausibly alleges a deprivation of a property interest in a discretionary benefit. Although the Town argues that the Board never granted Whistle Stop the right to develop its property using a SABRE SBR system (Doc. No. 66 at 7), Whistle Stop alleges that the Board approved the SABRE SBR system. (Doc. No. 52 ¶ 90.) The Board voted at its October 13, 2015 meeting to allow the SABRE SBR wastewater system for the Whistle Stop subdivision. (Id.) Whistle Stop also alleges that the Board denied its use of the SABRE SBR system that it previously approved. (See Doc. No. 52 ¶ 124.) At a September 16, 2016 meeting, the Board made a motion, which was unanimously approved, to direct Whistle Stop to select an alternative SBR system. (Id.

¶ 131.) Accordingly, to the extent Whistle Stop's substantive due process claim relies on due process violations occurring on or after November 18, 2015, the motion to dismiss is denied.[3]

### 2. Procedural Due Process

To demonstrate a violation of procedural due process, the plaintiff has the burden of showing that: "(1) he had a life, liberty, or property interest protected by the Due Process Clause; (2) he was deprived of this protected interest; and (3) the state did not afford him adequate procedural rights prior to depriving him of the property interest." EJS Props., 698 F.3d at 855 (quoting Women's Med. Prof'l Corp. v. Baird, 438 F.3d 595, 611 (6th Cir. 2006)). The Town argues that Whistle Stop's procedural due process claim should be dismissed because Whistle Stop does not adequately allege that it had a protected interest. As discussed above, Whistle Stop plausibly alleges that it had a property interest protected by the due process clause. See Range v. Douglas, 763 F.3d 573, 588 n.6 (6th Cir. 2014) (stating that the class of interests protected by substantive due process is narrower than those protected by procedural due process).

In addition, the Town argues that Whistle Stop fails to plausibly allege that it was not afforded procedural rights. However, as Whistle Stop aptly asserts, "Procedural due process is not satisfied when a person has a protected interest under the Due Process Clause and the individual responsible for deciding whether to deprive that person of his interest is biased." Heyne v. Metro. Nashville Pub. Sch., 655 F.3d 556, 566 (6th Cir. 2011); see also Withrow v. Larkin, 421 U.S. 35, 47 (1975) (stating that "a biased decisionmaker [is] constitutionally unacceptable"). Whistle Stop repeatedly alleges that the Town was biased toward Whistle Stop because of its relationship with

---

[3] Because the Court denies the Town's motion on this basis, it need not address Whistle Stop's additional argument that it has a due process right not to be subjected to the Board's arbitrary and irrational decisions. The Court also declines to address the Town's argument that Whistle Stop's substantive due process claim should be dismissed because the conduct alleged does not shock the conscience.

Whistle Stop's Managing Member, Mr. Franks. See, e.g., Doc. No. 52 ¶ 12 ("Mayor Napier despises and cannot stand Mr. Franks . . . Mr. Franks became 'persona non grata' with the Town."); id. ¶ 25 ("At least one former Town official has confirmed that Mayor Napier believed it was more important to 'slap [Mr. Franks] around and stop development' than to do what was best for the Town."). Whistle Stop further alleges that Mr. Cosentini's treatment of Whistle Stop is consistent with Mayor Napier's personal animus and ill will toward Mr. Franks and entities that he is involved. See id. ¶ 114. Accordingly, the motion to dismiss is denied to the extent Whistle Stop's procedural due process claim relies on violations occurring on or after November 18, 2015.

### C. Equal Protection Claim (Count II)

Whistle Stop's equal protection claim is commonly known as a "class-of-one" challenge, in which it must allege that: (1) it has been intentionally treated differently from others similarly situated; and (2) there is no rational basis for the disparate treatment. United States v. Green, 654 F.3d 637, 651 (6th Cir. 2011) (quoting Vill. of Willowbrook v. Olech, 528 U.S. 562, 564 (2000)). The Town argues that Whistle Stop's equal protection claim should be dismissed because Whistle Stop has failed to plausibly allege the first element.

Although the Sixth Circuit has not yet defined the extent to which individuals must be similarly situated to others in order to maintain a class-of-one claim, it appears to endorse the Seventh Circuit's view that to be similarly situated, the challenger and his comparators must be "prima facie identical in all relevant respects or directly comparable . . . in all material respects." Green, 654 F.3d at 651 (quoting United States v. Moore, 543 F.3d 891, 896 (7th Cir. 2008) (internal quotation marks and citation omitted)). Furthermore, the Sixth Circuit has stated that when evaluating whether parties are similarly situated, courts should not demand exact correlation but should instead seek relevant similarity. EJS Props., 698 F.3d at 864-65.

Whistle Stop argues that it plausibly alleges that Bridgemore Village, Williamson County Schools ("WCS"), and Two Farms are similarly situated comparators. With regard to Bridgemore Village and WCS, Whistle Stop alleges that the Board voted to transfer 75 taps "to the Town's wastewater system from the current developer" of Bridgemore Village to WCS and approved an additional 7 taps to WCS and 69 taps for the completion of Bridgemore Village. (Doc. No. 52 ¶ 97.) These approvals were conditioned on the Town having adequate treatment and disposal capacity at the time of the proposed construction. (Id.) Whistle Stop alleges that they received different treatment from Bridgemore Village and WCS because "inexplicably, the Town rejected Whistle Stop's proposal to provide drip area in order to connect to the Town's wastewater system—despite Mr. Cosentini expressly stating that this was a viable option for Bridgemore Village and WCS the year before." (Id. ¶ 126.) The Town was "willing to allocate additional sewer capacity for WCS's proposed school so long as the net effect on drip field capacity was positive for the Town" and the Town offered "to compensate WCS for any excess drip field." (Id. ¶ 128.) However, Whistle Stop's sewer request was rejected outright even though Whistle Stop offered excess drip field capacity to the Town for free. (Id. ¶ 129.) Although Whistle Stop alleges that Bridgemore Village, WCS, and Whistle Stop were all developments in the Town occurring around the same time and involved with the Board for sewage related issues, there are no additional factual allegations detailing why these entities are identical in all relevant respects or directly comparable in all material respects. Whistle Stop does not specify Bridgestone Village's characteristics and only alleges that the WCS development involved a public school. (Id. ¶ 127.) These allegations, without more, are insufficient to plausibly allege that Bridgemore Village and WCS are similarly situated to Whistle Stop.

With regard to Two Farms, Whistle Stop alleges that this development included "residential, commercial, and recreational uses," including 800 residences and a Tiger Woods designed golf course. (Id. ¶¶ 153, 155.) Two Farms' alleged characteristics greatly differ from the Development here. The only similarity between Two Farms and Whistle Stop alleged are that they are both developments in the Town occurring around the same time. This is insufficient to plausibly allege a class-of-one equal protection claim. Accordingly, because Whistle Stop fails to plausibly allege that Bridgemore Village, WCS, or Two Farms are similarly situated, nor has Whistle Stop alleged any other comparators, Whistle Stop's equal protection claim is dismissed with prejudice.[4]

### IV. Conclusion

For the foregoing reasons, the Town's Motion to Dismiss (Doc. No. 58) is granted in part and denied in part. The motion is granted as to Whistle Stop's equal protection claim and all claims arising from Section 1983 violations prior to November 18, 2015. These claims are dismissed with prejudice. The motion is denied as to the alleged due process violations arising on or after November 18, 2015. The Court will file an appropriate Order.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE

---

[4] Having dismissed Whistle Stop's equal protection claim on the aforementioned basis, the Court will not address the Town's additional arguments related to the claim's second element.